1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8              WESTERN DISTRICT OF WASHINGTON, SEATTLE

**OMNI INNOVATIONS, LLC, a**
9   **Washington Limited Liability**              NO. 06-01284
    **company; EMILY ABBEY, an**
10  **individual,**

11                          **Plaintiffs,**          **MOTION TO DISQUALIFY**
                                                     **COUNSEL**
12        v.
                                                     NOTED FOR HEARING:
13  **ASCENTIVE, LLC, a Delaware**                   FRIDAY, OCTOBER 13, 2006
    **limited liability company; ADAM**
14  **SCHRAN, individually and as part of**
    **his marital community; JOHN DOES,**
15  **I-X,**

16                          **Defendants,**

17
                              **I.   MOTION**
18
19        Plaintiff, Omni Innovations, LLC ("Omni") by and through its undersigned

20  attorneys, Robert J. Siegel and Douglas McKinley, hereby moves the Court for an order

21  disqualifying Floyd E. Ivey from representation of Defendants herein.

22

23

24

25  -1                                         **MERKLE SIEGEL & FRIEDRICHSEN**
    MOTION TO DISQUALIFY DEFENDANTS' COUNSEL       1325 Fourth Ave., Suite 940
                                                         Seattle, WA 98101
                                                      Phone: 206-624-9392
                                                        Fax: 206-624-0717

## II. STATEMENT OF FACTS

1. In September 2006, Plaintiffs Omni Innovations, LLC. ("Omni"), a small interactive computer service, and Emily Abbey ("Abbey"), an individual internet and computer user, properly commenced this action against the Defendant Ascentive, LLC. ("Ascentive"), a Philadelphia based internet marketing firm, and its principal owner and manager Adam Schran ("Schran").

2. The case involves alleged violations of both the Washington anti-spam statute, 19.190 et seq., and the Federal Can-Spam Act of 2003.

3. Floyd E. Ivey, an attorney in Kennewick, Washington, who currently represents Ascentive and Schran in another action in the Eastern District of Washington (filed in 2004) notified Plaintiffs' counsel that he intended to appear on behalf of Ascentive and Schran in this action. (See Declaration of Robert J. Siegel submitted herewith).

4. In prior and pending litigation, Plaintiff's counsel has previously advised Mr. Ivey of the conflict of interest inherent in his representation of parties with adverse interests to those of Mr. Gordon and Omni. (See Declaration of Robert J. Siegel).

5. In this case, Plaintiffs' counsel immediately advised Mr. Ivey that any attempt to appear on Defendants' behalf would be met with a motion to disqualify in light of Mr. Ivey's past attorney-client relationship with Omni and James S. Gordon, Jr., Omni's principal owning member, and the glaring conflict of interest created thereby. (See Declarations of Robert J. Siegel, and James S. Gordon, Jr.).

6. Mr. Ivey not only served as Omni's principal attorney in preparing its business contracts, but also engaged in detailed discussions with Mr. Gordon about Omni's strategies for combating internet spam, and specifically the bringing of lawsuits, such as this one, as a possible tactic in

MERKLE SIEGEL & FRIEDRICHSEN
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

accomplishing its anti-spam efforts. (See Declaration of James S. Gordon, Jr.).

7.  In direct violation of the Rules of Professional Conduct Mr. Ivey has completely failed to disclose the conflict of interest, and/or to obtain a written waiver from Omni or Mr. Gordon.  (See Gordon Declaration).

8.  Mr. Ivey has an established history of disregard for the rules of ethics in the area of attorney-client conflicts of interest as evidenced in the case of Sanders v. Woods, 121 Wash.App. 593, 89 P.3d 312 (Wash.App.Div.3 (2004), where Mr. Ivey was admonished by the court there for engaging in a similar conflict of interest involving his client there, as discussed in more detail below.

## III.    STATEMENT OF ISSUES

1.  Should the Court enter an order disqualifying Floyd E. Ivey from this matter, and from representing any party with interests adverse to Plaintiff Omni?

2.  Should the Court award attorney fees and sanctions against Floyd E. Ivey for his willful disregard for, and violation of the Rules of Professional Conduct?

## IV.    EVIDENCE RELIED UPON

This Motion is based upon the files and records herein, and the memorandum of legal authority cited herein.

-3
MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

MERKLE SIEGEL & FRIEDRICHSEN
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

1

2

## V.    DISCUSSION

3

**5.1    There Was An Attorney-Client Relationship Established**

4

**Between Mr. Ivey And both Omni and Mr. Gordon.** The Washington Supreme Court

5

discussed the factors involved in establishing the existence of an attorney-client

6

relationship in *BOHN v. CODY*, 119 Wn.2d 357, P.2d 71 (1992). The Court there

7

stated:

8

9

10

11

12

> "The essence of the attorney/client relationship is whether the attorney's advice or assistance is sought and received on legal matters. See 1 R. Mallen & J. Smith 11.2 n.18; 7 Am. Jur. 2d Attorneys at Law 118 (1980). The relationship need not be formalized in a written contract, but rather may be implied from the parties' conduct. In re Mc-Glothlen, 99 Wn.2d 515, 522, 663 P.2d 1330 (1983). Whether a fee is paid is not dispositive. McGlothlen, at 522. The existence of the relationship "turns largely on the client's subjective belief that it exists". McGlothlen, at 522. The client's subjective belief, however, does not control the issue unless it is reasonably formed based on the attending circumstances, including the attorney's words or actions. See 1 R. Mallen & J. Smith 8.2 n.12; Fox v. Pollack, 181 Cal. App. 3d 954, 959, 226 Cal. Rptr. 532 (1986); In re Petrie, 154 Ariz. 295, 299-300, 742 P.2d 796 (1987)

13

Here, in light of the Declaration of James S. Gordon, Jr. submitted herewith,

14

there can be no doubt that an attorney-client relationship was established between

15

Omni and Mr. Ivey. Based on Mr. Ivey's *paid* work in the design and drafting of Omni's

16

business contracts, and the extensive discussions between Mr. Ivey and Mr. Gordon

17

regarding its strategies for fighting internet spam, including the type of litigation in the

18

instant action, the targeting of specific defendants, and, moreover, upon Mr. Gordon's

19

subjective belief that the attorney-client relationship existed, it would appear axiomatic

20

that it did indeed exist.

21

Having attached initially, the attorney-client relationship continues even after it

22

may terminate de facto, see; Swidler *& Berlin v. United States*, 524 U.S. 399, 406-07,

23

118 S. Ct. 2081, 141 L. Ed. 2d 379 (1998). Accordingly, the protections set forth in the

24

25

-4

MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

**MERKLE SIEGEL & FRIEDRICHSEN**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

Rules of Professional Conduct, and in particular RPC 1.9 regarding former clients, clearly apply here.

### 5.2    There Is A Blatant Conflict Of Interest In Mr. Ivey's Representation Of A Party With Directly Adverse Interests To His Former Client.

**RULE 1.9 DUTIES TO FORMER CLIENTS**

(a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent in writing.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

(1) whose interests are materially adverse to that person; and

(2) about whom that lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

Here, in light of the Declaration of James S. Gordon, Jr., and the attendant circumstances, there can be no doubt that Mr. Ivey's representation of Defendants in this litigation, whose interests are patently adverse to those of his former client, Omni, creates an unacceptable conflict of interest requiring disqualification.

-5
MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

**MERKLE SIEGEL & FRIEDRICHSEN**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

1   As the official Comments to RPC 1.9 state, in pertinent part:

2

3   [1] After termination of a client-lawyer relationship, a lawyer has certain continuing duties
with respect to confidentiality and conflicts of interest and thus may not represent another client
except in conformity with this Rule. Under this Rule, for example, a lawyer could not properly
4   seek to rescind on behalf of a new client a contract drafted on behalf of the former client. So
also a lawyer who has prosecuted an accused person could not properly represent the accused
5   in a subsequent civil action against the government concerning the same transaction. Nor could
a lawyer who has represented multiple clients in a matter represent one of the clients against
6   the others in the same or a substantially related matter after a dispute arose among the clients
in that matter, unless all affected clients give informed consent…

7

8   Thus, it is axiomatic that under this rule, a lawyer may not represent another client in

9   adversarial litigation related to the very issues and confidences shared with his former

10   client, as is the case here. Regarding the issue of whether a matter is "substantially

11   related" for purposes of applying this rule, the official Comments state, in pertinent part:

12

13   [3] Matters are "substantially related" for purposes of this Rule if they involve the same
transaction or legal dispute or if there otherwise is a substantial risk that confidential factual
14   information as would normally have been obtained in the prior representation would materially
advance the client's position in the subsequent matter…

15   Here, as per Mr. Gordon's Declaration, Omni, through Mr. Gordon, did share

16   certain confidential information with Mr. Ivey during his representation of Omni, thereby

17   creating a "substantial risk" that those confidences would be disclosed, which in the

18   context of adversarial litigation of this type, could certainly create prejudice and harm to

19   Omni. In determining when to exercise its discretion to disqualify counsel in cases

20   involving loss of the protection of privilege, Court should resolve any doubts in favor of

21   disqualification. *Richards v. Jains,* 168 F. Supp. 2nd 1195 (2001), and cases cited

22   therein.

23

24

25   -6
MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

MERKLE SIEGEL & FRIEDRICHSEN
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

1    (In other litigation of this type, in which Mr. Gordon himself is a plaintiff, Mr. Ivey as well

2    as other defense counsel have made claims against Mr. Gordon alleging that he is a

3    "serial" plaintiff, and is "solely" in it for the money, in attempts to cast him in a negative,

4    or adverse light to the court, and ultimately to a jury for engaging in the very spam-

5    fighting strategies shared between Mr. Ivey and Mr. Gordon).  Thus, not only is there a

6    "substantial risk" that client confidences might be disclosed in an adverse manner, but

7    that risk has already been realized!

8

9          In considering disqualification courts "must be mindful that 'the interests of

10   the clients are primary, and the interests of the lawyers are secondary.' " *Oxford*

11   *Systems, Inc. v. CellPro, Inc.,* 45 F.Supp.2d 1055, 1066 (W.D.Wash.1999) citing

12   *Haagen-Dazs Co., Inc. v. Perche No! Gelato, Inc.,* 639 F.Supp. 282, 286 (N.D.Cal.1986)

13        Disqualification may be necessary where a party has had access to privileged

14   information such as where an attorney has a conflict of interest due to a prior

15   representation.  *In re Firestorm 1991,* 129 Wash.2d 130, 140, 916 P.2d 411 (1996).

16        As the Washington Court of Appeals stated in *ALPHA INVESTMENT COMPANY*

17   *v. THE CITY OF TACOMA*, 13 Wn. App. 532, 536 P.2d 674 (1975),

18

19        [3] In our view the rule should be that where it can reasonably be said that in the course of the
     former representation the attorney might have acquired information related to the subject matter of his
20   subsequent representation, the attorney should be disqualified. The breach of confidence does not have
     to be proved. It should be presumed in order to preserve the spirit of (CPR) Canon 9. Hull v. Celanese
21   Corp., supra. This is also the thrust of Kurbitz v. Kurbitz, supra. Only by application of this rule can the
     client, Pierce County and all its citizens, be absolutely certain that no breach of confidence was the cause
     of any adverse ruling which might occur in this case.

22        Likewise here, in light of the circumstances described by Mr. Gordon on behalf of

23   Omni, the former client, the breach of confidence "should be presumed" for purposes of

24

25   -7
     MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

**MERKLE SIEGEL & FRIEDRICHSEN**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

1   disqualification.  This is particularly so in light of the early stage of this litigation and the

2   resultant lack of substantial prejudice to defendants in this case.

3

4

5       **5.3     Mr. Ivey Failed To Disclose The Conflict, And To Obtain A Waiver – There**

6   **Was No Informed Consent.**

7

8       It is true that the presence of a conflict of interest with a former client is not

9   necessarily improper, nor does it necessarily constitute grounds for disqualification.

10  The one exception in this area is where the attorney fully discloses the potential conflict,

11  and obtains a written waiver of the conflict from his/her former client.  As the official

12  Comment No. 9 to RPC 1.9 states in pertinent part:

13

14      "The provisions of this Rule are for the protection of former clients and can be waived if
    the client gives informed consent, which consent must be confirmed in writing under paragraphs
15  (a) and (b). See Rule 1.0(e). With regard to disqualification of a firm with which a lawyer is or
    was formerly associated, see Rule 1.10.

16

17      Here, as Mr. Gordon on behalf of Omni states in his Declaration, Mr. Ivey

18  completely failed to disclose the potential conflict, and to obtain, or even request a

19  written waiver from his former client.  Thus, there was no informed consent, and Mr.

20  Ivey should not now be heard to argue otherwise.

21      Mr. Ivey's conduct is patently improper here in light of the fact that he completely

22  failing to disclose the conflict, and/or to obtain a written waiver, i.e., failing to provide

23  informed consent. When such an impropriety "is clear, affects the public view of the

24

25  -8
    MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

**MERKLE SIEGEL & FRIEDRICHSEN**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

judicial system or the integrity of the court, and is serious enough to outweigh the parties interests in counsel of their own choice" disqualification is justified. *Optyl Eyewear Fashion Int'l Corp., 760 F.2d at 1049*.   The Court should find that this is such an impropriety that justifies disqualification.

**5.4    Mr. Ivey Would Potentially Be In Violation Of  RPC 3.7 – The "Witness Advocate Rule".**

**RPC 3.7** specifically states:  *"A lawyer shall not act as advocate at a trial in which the lawyer or another lawyer in the same firm is likely to be a necessary witness . . . ."*

And as the Official Comments state:

"In general, the rule is called the Witness/Advocate Rule.  Three reasons are given by courts and commentators for precluding attorneys from acting as advocates in cases in which they are likely to be witnesses:

The advocate who also testifies taints the judicial system, creating an appearance of impropriety.  This is not to say that lawyers will actually lie, but because courts are mindful of the possibility that the public may think that lawyers may distort the truth, and thereby diminish the public's respect for and confidence in the profession.  Legal Malpractice, Mallen and Smith, 3rd Edition, 1989 section 11.8.

Secondly, according to Mallen and Smith "an advocate who testifies thereby prejudices either his testimony, his advocacy or both."  Ibid.  Third, the testimony of the lawyer/advocate may harm the adverse party.  "Even opposing counsel may feel constrained by professional courtesy from impeaching the advocate-witness."  Ibid.

Courts attempt to balance the harm caused by disqualification with a party's right to have counsel of his choice.  Where the lawyer, however, is a necessary witness,

-9
MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

**MERKLE SIEGEL & FRIEDRICHSEN**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

1

2

3

4

5

6

7

8

9

10

disqualification is required. <u>Cherry v. Coast House Ltd</u>., 359 S.E.2d 904 (Ga 1987) <u>cert.</u>

<u>denied</u>.  108 S.Ct 1015 (1988).  Here, it is conceivable that, as the attorney who

handled the initial design and drafting of business contracts for Omni, and with whom

Mr. Gordon discussed the details of his anti-spam strategies, might be called as witness

on behalf of either party.  That is, by Defendants on one hand to support their

contention that Mr. Gordon's intentions in bringing anti-spam lawsuits is somehow

wrongful, or nefarious, or on the other hand by Omni itself to establish the contrary, that

Mr. Gordon's intentions were legitimate, if not noble.  In either case, this would put Mr.

Ivey in direct contravention of RPC 3.7, and therefore serves to further support his

disqualification from this matter.

11

12

13

14

      Further, in the event that Mr. Ivey is heard to argue, or give assurances that no

client confidences have, or would be revealed, this Court in *Richards v. Jains,supra,*

addressing the same argument by those conflicted attorneys (which conflict was

imputed from their paralegal's access to confidential information) stated:

15

16

17

18

19

20

21

22

      "In the instant case, although Hagens Berman has gone to great lengths and argued
stridently that no confidences were revealed to or used by the firm, the undisputed facts of the
case create a substantial taint on any future proceedings.   Simply returning the Disk and
removing the possibility of any future impingement on InfoSpace's attorney-client privilege will
not remove the taint.  "A reasonable member of the bar or the public would share ... the nagging
suspicion that plaintiffs' trial preparation and presentation of their case had benefitted from
confidential information obtained from [the Disk]." *Williams*, 588 F.Supp. at 1045.  "The
dynamics of litigation are far too subtle, the attorney's role in that process is far too critical, and
the public's interest in the outcome is far too great to leave room for even the slightest doubt
concerning the ethical propriety of a lawyer's representation in a given case." *Emle Indus., Inc.*
*v. Patentex, Inc.*, 478 F.2d 562, 571 (2nd Cir.1973).   The disclosure of privileged information
cannot be undone in these circumstances.   Therefore the Court finds that the only remedy to
mitigate the effects of Hagens Berman's eleven month possession and review of the Disk is
disqualification." *at 1206-1207.*

23

24

      Thus, Mr. Ivey's conduct has created a substantial taint on this matter, and he

should not now be heard to argue that in fact he has not disclosed client confidences.

25

-10

MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

**MERKLE SIEGEL & FRIEDRICHSEN**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

**5.5    There Should Be No Substantial Prejudice To Defendants From Mr. Ivey's Disqualification.**    Plaintiffs acknowledge that disqualification can be used in litigation to obtain a tactical advantage by one side or another, particularly when such a motion is brought late in the litigation, after much attorney time and resources have been expended.    *See, e.g., First Small Bus. Inv. Co. of California v. Intercapital Corp. of Oregon,* 108 Wash.2d 324, 738 P.2d 263, 270 (1987)(favorably citing *Cent. Milk Producers Co-op. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir.1978)).  A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion:  "This court will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed." *Id.*[2][2] In determining whether the movant has waived its right to object to the opposing party's choice of counsel, the court must consider: " '(1) the length of the delay in bringing the motion to disqualify; (2) when the movant learned of the conflict; (3) whether the movant was represented by counsel during the delay; (4) why the delay occurred; and (5) whether disqualification would result in prejudice to the non-moving party.'" *See, e.g., Geissal v. Moore Med. Corp.*, 92 F.Supp.2d 945, 946 (E.D.Mo.2000).

However, that is clearly not the case here.  Plaintiff has brought this motion virtually immediately, even before Mr. Ivey has filed a formal appearance, and after warning Mr. Ivey of its intent to disqualify him should he attempt to appear on behalf of

_____

-11
MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

**MERKLE SIEGEL & FRIEDRICHSEN**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

Defendants.  (See Declaration of Robert Siegel).   Thus, there has been no delay, and therefore no resulting prejudice to Defendants.

**5.6    Incredibly, Mr. Ivey Has Already Been Admonished By The Washington State Courts On This Very Issue, Yet He Ignores The Consequences.**    In *Sanders v. Woods*, 121 Wash.App. 593, 89 P.3d 312 (Wash.App.Div.3,2004) Division 3 of the Washington Court of Appeals ordered the disqualification of Mr. Ivey in a case where he again ignored a blatant conflict of interest with another former client. There the Court said:

"The facts of Mr. Ivey's former representation and the more recent representation by Mr. Ivey's business partner provide, at a minimum, the appearance of the possibility that confidential information was disclosed. The prohibition against attorneys 'side switching' is based both on the RPC prohibiting the disclosure of confidences and also on the duty of loyalty the attorney owes his or her clients.   Teja,68,Wn.App.,at798-99. Mr. Ivey should have voluntarily withdrawn after Mr. Sanders timely objected to his appearance on behalf of Ms. Woods. Since he did not, the trial court should have ordered it. We reverse the trial court decision to the contrary and order the immediate disqualification of Mr. Ivey and his law firm from any further representation of Ms. Woods."

In light of the foregoing, it is nothing short of an outrage that Mr. Ivey would here be so willing, even vehement in asserting his right to violate the Rules of Professional Conduct yet again.  At a minimum, such intransigent conduct, and glaring disregard for the ethical rules governing attorney conduct are clearly worthy of sanctions.

-12
MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

**MERKLE SIEGEL & FRIEDRICHSEN**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

1

**CONCLUSION**

2      In conclusion, despite that they have been given every opportunity to do so, it is

3    apparent that Mr. Ivey has no intention of abiding by Rules Of Professional Conduct,

4    and he should be disqualified from appearing on behalf of Defendants in this matter.

5    Further, in light of Mr. Ivey's glaring disregard for the ethical rules, and particularly

6    considering his past conduct in that regard, the Court should award Plaintiff its attorney

7    fees, and sanctions against Mr. Ivey.

8

9      RESPECTFULLY SUBMITTED, this 2nd day of October, 2006.

10   MERKLE SIEGEL & FRIEDRICHSEN, P.C.         DOUGLAS E. MCKINLEY, JR
                                                 Attorney at Law
11

12   /S/ Robert J. Siegel                        /S/ Douglas E. McKinley, Jr.
     Robert J. Siegel, WSBA #17312               Douglas E. McKinley, Jr., WSBA
13   #20806                                       
     Attorney for Plaintiffs                     Attorney for Plaintiffs
14

15

16

17

18

19

20

21

22

23

24

25
     -13
     MOTION TO DISQUALIFY DEFENDANTS' COUNSEL

MERKLE SIEGEL & FRIEDRICHSEN
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717