**EXHIBIT 2**

From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Article from Wired World
Date: Thu, 25 Sep 2003 09:38:24 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

The problem with present resistance to spam is the cost. That is, it will cost $225/hour for me to explore with no clear ability to find a solution. Further, should you actually locate a spammer there would be doubt regarding the ability to collect on any judgment.

In the mean time someone has commenced such a lawsuit. I haven't heard re: the status for months. And the Attorney Generals of many states are likely looking at the issue.

Thus others are doing the work at no expense to you. There will be a real budget needed for you to commence the effort. Please advise if you want to examine the prospect of going forward.

Floyd


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Thursday, September 25, 2003 9:09 AM
Subject: Article from Wired World


> Floyd:
>
> My domain name - gordonworks.com is under siege. Whether we consider my
> domain name intellectual PROPERTY or personal PROPERTY, this property is
> being encroached upon - to the tune of 4MB+ every day. This encroachment
> displaces my computer's memory with unsolicited - even unlawful commercial
> email.
>
> I have kept records of this spam since 8/6/03. In that time (51 days), I
> have received 122MB of spam. In the past 24 hours, I have received 4.6MB
of
> spam. I am feeling a since of urgency...
>
> One might ask why I don't simply filter and delete these email. I have
been
> filtering and deleting email since 1998. During that time, my daily volume
> of email approached 1500 messages per day. I found that filters can be
> defeated/circumvented - so I spent time revising and updating my filters.
> My collection of spam (over 20,000 messages) now serves one purpose - that
> of being evidence against those who spam me and millions of others.
>
> My spam problem was an imposition on my business and it is an imposition
on
> my personal use of the Internet. Therefore, I have chosen to stop running
> and hiding from spam. I believe that Washington's anti-spam statute was
> designed to prevent much of the abuse that I am experiencing.
>
> The article below discusses the concept of "trespass" as it pertains to
> spam...I experience this sense of being trespassed upon each time that I
> check my email - 6+ times per day.

0019

>
> Thanks for considering my issues.
>
> Best Regards,
> Jim Gordon
>
>
>
>
> Trespassing or Free Speech?
>
> By <http://www.wired.com/news/feedback/mail/1,2330,742,00.html>Ryan
>
Singel<http://www.wired.com/news/feedback/mail/1,2330,742,00.html>5c7a64.jpg
>
> Story location:
>
<http://www.wired.com/news/business/0,1367,58330,00.html>http://www.wired.co
m/news/business/0,1367,58330,00.html
>
> 02:00 AM Apr. 03, 2003 PT
>
> The California Supreme Court heard arguments Wednesday in an appeal to
> determine whether an ex-Intel employee's barrage of e-mails to his former
> colleagues constitutes illegal trespassing on the company's computer
system.
>
> The case, which has been closely watched as a potential test of legal
> limits to free speech on the Internet, was originally
>
<http://appellatecases.courtinfo.ca.gov/search/mainCaseScreen.cfm?dist=0&doc
_id=188342&rc=1>filed
> by Intel against Ken Hamidi, an engineer who sent a series of scathing
> e-mails about Intel's employment practices to company employees after he
> was fired in 1996.
>
> "The case involves whether the Internet is a medium everyone can use in a
> democratic way, or whether a few very large corporations can control the
> Internet and impoverish free speech," said Karl Olson, one of Hamidi's pro
> bono lawyers. "The court took a big chunk out of the First Amendment."
>
> Intel counters that Hamidi's e-mails reduced employees' productivity, made
> them worry that their jobs were in danger and forced the IT department to
> spend hours trying to block his e-mails.
>
> A 2-1 decision by the December 2001 state appeals court agreed with Intel,
> declaring in a majority opinion that "Intel proved more than its
> displeasure with Hamidi's message, it showed it was hurt by the loss of
> productivity...."
>
> Still, Hamidi's attorneys emerged hopeful that California's highest court
> will rule in their favor.
>
> "The majority of the justices seemed to focus on ... whether sending
> someone an e-mail can constitute a trespass, even where there is no
> allegation of damage to the receiving computer," said Gregory Lastowka,
one
> of the attorneys representing Hamidi.
>
> Hamidi's attorneys noted that during Wednesday's hearing, Justice Joyce
> Kennard asked rhetorically whether Intel was claiming damage to its

0020

> computer equipment or that its employees were its property.
>
> In a brief submitted to state Supreme Court justices, Intel discounted
> Hamidi's free speech objections, saying the appeals court ruling "properly
> protects private property without impinging on free speech conducted off of
> that property." Intel did not respond to requests for comment.
>
> The dispute centers on a bulk e-mailing campaign by Hamidi, who sent six
> messages to a list of more than 30,000 Intel employees over a two-year
> period. In the e-mails Hamidi, who believes he was unfairly fired, asked
> employees to join his <http://www.faceintel.com>anti-Intel group and
> suggested they leave the company.
>
> One e-mail asked, "Are you tired of being victimized, ... redeployed or
> targeted for termination?" Each e-mail included an opt-out provision,
> which, according to Hamidi, only 450 employees used.
>
> After filing suit, Intel obtained a court injunction to stop Hamidi's
> e-mails by using a little-known legal provision called "trespass to
> chattels." By sending the e-mails, the company argued that Hamidi was, in
> effect, trespassing on company property.
>
> State appellate judges upheld the application of the trespass statute to
> the Internet. "The common law adapts to human endeavor," the opinion
> stated. "For example, if rules developed through judicial decisions for
> railroads prove nonsensical for automobiles, courts have the ability and
> duty to change them."
>
> Lastowka, one of Hamidi's lawyers, says the decision suggests the court is
> creating a new law. He argues that the ruling could let companies control
> who hyperlinks to or downloads Web pages from their servers.
>
> Intel rebutted this argument in a recent brief that said there is "little
> substance to Hamidi's alarmist prediction that speech on the Internet hangs
> in the balance'" and that "Hamidi points to no flood of trespass to
> chattels lawsuits, nor any genuine degradation of the Internet as a vehicle
> for public debate and discourse."
>
> Lastowka points out that California already has a strict antispam law --
> and that Hamidi's e-mails are implicitly legitimate under that law.
>
> "When the California legislature considered the shape of an antispam
> statute, they decided it was limited to commercial speech," said Lastowka.
>
> Hamidi's lawyers also argue that the trespass statute doesn't apply because
> Hamidi's e-mails didn't unduly burden Intel's servers, as Intel itself
> admits. In previous cases, AOL and Hotmail used the same statute to sue
> spammers who had overwhelmed their servers and customers' e-mail accounts.
>
> Lee Tien of the <http://www.eff.org>Electronic Frontier Foundation says
> that Hamidi's e-mails don't fall into the same category.
>
> "They weren't commercial, they weren't very bulk, and they were targeted
> only to Intel employees," Tien said.
>
> Before today's hearing, privacy advocates were heartened by the simple fact

0021

> that the court decided to review the Court of Appeals 2-1 decision.
>
> "Why would they take it unless they are going to reverse it?" asked Tien.
> After the hearing, however, Tien was reluctant to declare victory.
>
> The California Supreme Court is expected to issue its ruling in two to
> eight months.
>
> Tien drew some encouragement, however, from Wednesday's hearing, in which
> some questions seemed influenced by a dissenting opinion in the case
> written by a state appeals justice. In the dissent, Justice Daniel Kolkey
> argued that "Intel seeks not merely to invoke the common law, but to modify
> it in a way that ... would affect the free flow of communication on the
> Internet."
>
> Prior to the hearing, Hamidi's lawyers had suggested it was more likely,
> however, that the Court will reverse on the grounds that Hamidi's e-mails
> have federal labor-law protections. These laws generally allow unions and
> aggrieved employees use of a company's bulletin board, phone system and
> inter-office mail to communicate with other employees.
>
> "The fundamental clash is: What does the Internet mean?" Tien said. "Is the
> Internet a feudal collection of computers that happen to be connected, or
> is it a network where everyone is connected to everyone?"
>
> 5c7cdb.jpg
>
>
>