UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OMNI INNOVATIONS, LLC, a Washington Limited Liability company; EMILY ABBEY, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>ASCENTIVE, LLC, a Delaware limited liability company; ADAM SCHRAN, individually and as part of his marital community; JOHN DOES, I-X,<br><br>Defendants. | C06-1284Z<br><br>ORDER |

This matter comes before the Court on Plaintiffs' Motion to Disqualify Counsel, docket no. 3. Having considered the briefs and declarations in support of and opposition to the motion, the Court enters the following Order.

## I. BACKGROUND

On September 19, 2006, Plaintiffs Omni Innovations, LLC ("Omni") and Emily Abbey filed a complaint alleging "anti-spam" claims under Washington and federal statutes against Defendants Ascentive LLC ("Ascentive") and Adam Schran, an officer of Ascentive. Am. Compl., docket no. 2. On October 3, 2006, prior to the appearance of defense counsel,

ORDER 1–

Plaintiffs moved to disqualify Floyd E. Ivey, an attorney in Kennewick, Washington, from representing Defendants. Pls.' Mot., docket no. 3. Plaintiffs assert that Omni and James S. Gordon, Jr., the principal member and owner of Omni, are Mr. Ivey's former clients, that this matter is substantially related to the former representation, and that Mr. Ivey has failed to obtain written consent from Mr. Gordon to represent Defendants, as required by Rule 1.9 of the Washington Rules of Professional Conduct ("RPC"). Plaintiffs also request attorney's fees and sanctions. Pls.' Mot. at 13. After Plaintiffs filed their motion, Mr. Ivey appeared on behalf of Defendants. Notices, docket nos. 8 and 26. Defendants (through Mr. Ivey) oppose Plaintiffs' motion to disqualify. Defs.' Resp., docket no. 14.

It is undisputed that in 2002, Mr. Gordon retained the legal services of Mr. Ivey to assist him in drafting contracts for Omni. Gordon Decl., docket no. 4, ¶ 2. Between September 2003 and December 2003, Mr. Gordon and Mr. Ivey exchanged a series of emails unrelated to the contract work performed by Mr. Ivey for Mr. Gordon. Mr. Gordon's initial email to Mr. Ivey on September 22, 2003 sought Mr. Ivey's help in bringing anti-spam lawsuits. Id., Ex. 1. Mr. Gordon described the number of cases and causes of action that he would like to bring, and the monetary relief that he would seek. Id. Mr. Ivey responded by stating that he "certainly has an interest" in helping Mr. Gordon. Id. Mr. Ivey commented on the difficulty of "gaining dollars" in these cases. Id. Mr. Ivey directed Mr. Gordon to contact the Attorney General's office, and then stated: "Please let me know the nature of any contact that you might have with the AG." Id.

A few days later, Mr. Gordon sent another email to Mr. Ivey, summarizing the evidence that he had gathered, and his motivation to fight spam, including the impact on his business. Id., Ex. 2. Mr. Ivey promptly emailed Mr. Gordon back, quoting Mr. Gordon a rate of $225 per hour, and offering his views about the difficulty in collecting on a judgment in these types of cases. Id. Mr. Ivey ended the email stating "[p]lease advise if you want to examine the prospect of going forward." Id.

ORDER  2–

1     Thereafter, Mr. Gordon sent Mr. Ivey two more emails. The email dated September
2 30, 2003 divulged the names of two possible defendants, and the amounts of money that
3 would be sought from them based on the evidence that he had against them. Id., Ex. 3. The
4 email dated December 30, 2003 summarized the success Mr. Gordon had, while acting pro
5 se, in obtaining temporary restraining orders against two (unnamed) companies that had been
6 spamming him. Id., Ex. 5. Mr. Ivey did not respond to these latter emails.

7     In addition to emails, Mr. Gordon's declaration states that "Mr. Ivey and I
8 corresponded and talked (face-to-face) about spam lawsuits for approximately six months."
9 Id. ¶ 3. Although Mr. Ivey has not denied this face-to-face correspondence, the substance of
10 this correspondence is unknown to the Court.

11    Mr. Gordon's declaration further states that "[t]here was no doubt in my mind at the
12 time that I had established an attorney-client relationship with Mr. Ivey." Id. ¶ 2. The
13 contemporaneous email that Mr. Gordon sent to his family on September 30, 2003, in which
14 he says he attached "[t]he complaints that I drafted for my attorney, Floyd Ivey,"
15 demonstrates that he believed Mr. Ivey was, in fact, his attorney. Id., Ex. 4.

16 **II.  DISCUSSION**

17    When determining whether to exercise discretion to disqualify counsel, the Court
18 should resolve any doubts in favor of disqualification. In re Coordinated Pretrial
19 Proceedings in Petroleum Prods. Antitrust, 658 F.2d 1355, 1359 (9th Cir. 1981). Attorneys
20 practicing in this district must abide by the Washington Rules of Professional Conduct. See
21 United States ex rel. Lord Elec. Co., v. Titan Pac. Constr. Corp., 637 F. Supp. 1556, 1560
22 (W.D. Wash. 1986); Local Rule GR 2(e)(2). RPC 1.9 provides that a lawyer may not
23 represent a client if the former client's interests are adverse and the matter is substantially

24
25
26

ORDER  3–

related, or if he or she is utilizing confidences to the disadvantages of the former client.[1]

RPC 1.9(a), (b).

The Washington Supreme Court discussed the factors to determine whether an attorney/client relationship is formed:

> The essence of the attorney/client relationship is whether the attorney's advice or assistance is sought and received on legal matters. The relationship need not be formalized in a written contract, but rather may be implied from the parties' conduct. Whether a fee is paid is not dispositive. The existence of the relationship turns largely on the client's subjective belief that it exists. The client's subjective belief, however, does not control the issue unless it is reasonably formed based on the attending circumstances, including the attorney's words or actions.

Bohn v. Cody, 119 Wn.2d 357, 363 (1992) (internal quotations and citations omitted). An attorney client prospective relationship is a "protected relationship" under Washington law. Dietz v. Doe, 131 Wn.2d 835, 845 (1997).

Mr. Gordon had a subjective belief that Mr. Ivey and he had an attorney-client relationship in the fall of 2003. Gordon Decl. ¶ 2.[2] Mr. Gordon's belief was reasonably

---

[1] RPC 1.9 provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents in writing after consultation and a full disclosure of the material facts; or
>
> (b) Use confidences or secrets relating to the representation to the disadvantage of the former client, except as rule 1.6 would permit.

[2] Mr. Gordon's statement as to his subjective belief in the attorney-client relationship is a significant piece of evidence distinguishing the present motion from the motion to disqualify that was pending before Judge Van Sickle in Gordon v. Impulse Marketing Group, Inc., Case No. CV-04-5125-FVS. The motion before Judge Van Sickle was also brought by different parties who had no attorney-client relationship with Mr. Ivey. Judge Van Sickle's Order, see docket no. 14 at 7-18, is not binding on the parties in the present case.

ORDER  4–

formed based on Mr. Gordon's and Mr. Ivey's existing professional relationship, which was established as a result of the contract work performed by Mr. Ivey for Omni, see Teja v. Saran, 68 Wn.App. 793, 796 (1993), and based upon Mr. Ivey's responses to Mr. Gordon's emails. Mr. Ivey's responses invited future contact and indeed led Mr. Gordon to disclose more details about his litigation strategy to Mr. Ivey. At a minimum, Mr. Gordon and Mr. Ivey had a prospective attorney-client relationship regarding the anti-spam lawsuits. It is noteworthy that Mr. Ivey did not provide any disclaimers regarding the attorney-client relationship to make clear to Mr. Gordon from the outset of his communications that Mr. Ivey would not be able to represent him. Cf. Bohn, 119 Wn.2d at 363-64 (no attorney-client relationship formed where disclaimers were provided).

Under Washington law, representations are "substantially related" "if they involve the same client and the matters or transactions in question are relevantly interconnected." FMC Techs., Inc. v. Edwards, 420 F.Supp.2d 1153, 1159 (W.D. Wash. 2006). RPC 1.9's "prohibition against side-switching is based not only upon the duty prohibiting the disclosure of confidences, but also upon a duty of loyalty." Teja, 68 Wn.App. at 798-99. Proof of disclosure of confidential information is not necessary if the matters are substantially related. Id. at 799. Because Mr. Gordon's and Mr. Ivey's email exchange concerned anti-spam lawsuits, and the present litigation is an anti-spam lawsuit brought by Mr. Gordon's company, Omni, the prospective attorney-client relationship formed between Mr. Ivey and Mr. Gordon in the fall of 2003 is relevantly interconnected, and therefore "substantially related," to Mr. Ivey's current representation of Defendants.

It is undisputed that Mr. Ivey did not seek a waiver of conflict from Mr. Gordon. Gordon Decl. ¶ 8. Accordingly, the Court GRANTS Plaintiffs' motion and disqualifies Mr. Ivey based upon Mr. Ivey's failure to comply with RPC 1.9(a).[3] However, the Court

---

[3] The Court does not reach the proposed alternative grounds for disqualification under RPC 1.9(b) or Rule 3.7.

ORDER 5–

DENIES Plaintiffs' motion as it relates to attorneys' fees and sanctions because Plaintiffs failed to provide any legal authority or argument in support of their request.

### III. CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion to Disqualify Counsel, docket no. 3. The Court grants the motion as it relates to representation and disqualifies Mr. Ivey from representing Defendants. The Court denies the motion as it relates to fees and sanctions.

IT IS SO ORDERED.

DATED this 29th day of November, 2006.

/s/ Thomas S. Zilly
Thomas S. Zilly
United States District Judge

ORDER  6–