1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT

8              WESTERN DISTRICT OF WASHINGTON, SEATTLE

9    **OMNI INNOVATIONS, LLC, a**
     **Washington Limited Liability**                    **NO. 06-01284**
10   **company; EMILY ABBEY, an**
     **individual,**

11                              **Plaintiffs,**           **DECLARATION OF JAMES S.**
                                                          **GORDON, JR. IN SUPPORT OF**
12        v.                                              **MOTION TO DISQUALIFY**
                                                          **COUNSEL**
13   **ASCENTIVE, LLC, a Delaware**
     **limited liability company; ADAM**
14   **SCHRAN, individually and as part of**
     **his marital community; JOHN DOES,**
15   **I-X,**

16                              **Defendants,**

17        James S. Gordon, Jr. declares as follows:

18

19   1)    I, James S. Gordon, Jr., am the principal member and owner of

20         Omni Innovations, LLC ("Omni") the Plaintiff in the above

21         captioned lawsuit.  I am over the age of 18 and am otherwise

22         competent to testify.

23   2)    In 2002, I retained the legal services of Floyd E. Ivey to assist me

24         in drafting contracts for Omni among other matters.  Mr. Ivey's firm

25   -1
     DECLARATION OF JAMES S. GORDON, JR.              **MERKLE SIEGEL & FRIEDRICHSEN**
     IN SUPPORT OF MOTION TO DISQUALIFY DEFENDANTS'       1325 Fourth Ave., Suite 940
     COUNSEL                                                 Seattle, WA 98101
                                                          Phone: 206-624-9392
                                                          Fax: 206-624-0717

EXHIBIT  |
Second Emergency Petition
for Writ of Mandamus

Dockets.Justia.com

invoiced me, and I paid them, for those services.  Subsequently, and periodically over the next several years I also disclosed and discussed the business strategy of bringing anti-spam lawsuits in order to enforce my rights under the anti-spam laws, take action against the scourge of spam, and generate business income. I even discussed particular possible target defendants who had spammed me numerous times with Mr. Ivey. I was told by Mr. Ivey that he was very interested in the spam lawsuits. He even quoted me a cost to pursue them. I explained at the time that I expected to be paid by a former partner and could pay his fee with those funds. There was no doubt in my mind at the time that I had established an attorney-client relationship with Mr. Ivey. I certainly expected that all of my discussions, and the confidences I had shared with Mr. Ivey would be held in absolute confidentiality.

3)     Mr. Ivey and I corresponded and talked (face-to-face) about spam lawsuits for approximately six months. It appears that I was being "strung along". Mr. Ivey said/did nothing to contraindicate his "very interested" comment to me.

4)     Although I do not believe that I have retained all of the relevant documents and writings, some of the documents which substantiate my contention that I had established an attorney-client relationship with Mr. Ivey include: **Exhibit 1** – email dated 9/22/03; **Exhibit 2** – email dated 9/25/03; **Exhibit 3** – dated 9/30/03; **Exhibit 4** – dated 9/30/03 to Jamila Gordon; **Exhibit 5** –

-2
DECLARATION OF JAMES S. GORDON, JR.
IN SUPPORT OF MOTION TO DISQUALIFY DEFENDANTS'
COUNSEL

dated 12/30/03; **Exhibit 6** – dated 4/4/05.

5) In early 2005 I advised my attorney, Douglas E. McKinley, Jr. that Mr. Ivey had represented me on another matter, and that we had also discussed strategies for bringing spam lawsuits. Mr. McKinley did not know during our first conversation the extent of the representation, and that an attorney-client relationship had been established, nor that substantial email communications existed between myself and Mr. Ivey.

6) The matter of Mr. Ivey's conflict of interest re-surfaced in 2005 with the advent of a second and third lawsuit in which Mr. Ivey undertook representation of those defendants, i.e. Gordon v. Ascentive and Gordon v. eFinancial. However, on this occasion I had located the emails that were exchanged with Mr. Ivey. Upon reading these emails, Mr. McKinley advised me that in his opinion there was a definite conflict. I was directed to the Washington State Bar Assn. (WSBA). My conversation with the individuals there led me to believe that the only recourse the WSBA had was to disbar Mr. Ivey. That outcome was too drastic. – so I did not pursue it at the time.

7) Upon Mr. Siegel's appearance on my and Omni's behalf in some of my cases, we put Mr. Ivey on notice of the conflict of interest, and requested that he disqualify himself voluntarily from pending cases, a request he declined.

8) I have made good faith efforts to challenge Mr. Ivey's

-3
DECLARATION OF JAMES S. GORDON, JR.
IN SUPPORT OF MOTION TO DISQUALIFY DEFENDANTS'
COUNSEL

**MERKLE SIEGEL & FRIEDRICHSEN**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

representation against me in these spam lawsuits, but he has refused to disqualify himself. Mr. Ivey never communicated to me about a potential conflict of interest, nor did he ever request that I execute a waiver of any conflict.

9) Now, particularly with Omni as a plaintiff, Mr. Ivey's continued representation of parties with adverse interests to Omni's and mine has become completely intolerable and unacceptable. Consequently, I ask that the Court act to disqualify him from further representation adverse to my and Omni's interests.

I declare under penalty of perjury under the laws of the State of Washington and of the United States that the foregoing is true and correct. Signed this 29th day of September, 2006

**James S. Gordon, Jr. for Omni Innovations, LLC as its owner and managing member.**

-4
DECLARATION OF JAMES S. GORDON, JR.
IN SUPPORT OF MOTION TO DISQUALIFY DEFENDANTS'
COUNSEL

MERKLE SIEGEL & FRIEDRICHSEN
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-624-9392
Fax: 206-624-0717

**EXHIBIT 1**

Case 2:06-cv-01284-TSZ    Document 47    Filed 10/03/2006    Page 2 of 4

floyd ivey, 10:29 AM 9/22/2003 -0700, Re: Help With District Courts Complaints    Page 1 of 3

From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Help With District Courts Complaints
Date: Mon, 22 Sep 2003 10:29:23 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

Thanks for the interesting note. I certainly have an interest but will
first point you to direct contact with the Attorney General's office. They
may be able to indicate the extent of their efforts and may have an interest
in your work.

Moving a positive result in District Court to a meaningful prospect of
gaining dollars will likely be difficult. The Attorney General may have a
clear perspective of the possibility of having success via litigation.

Please let me know the nature of any contact you might have with the AG.

Floyd E. Ivey


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Monday, September 22, 2003 8:15 AM
Subject: Help With District Courts Complaints


> Floyd:
>
> I would like you to consider the following information as I will need help
> completing the work that I have outlined, below...
>
> I have taken the following affirmative steps to reduce the 600+ emails
that
> I have been receiving every day since 1998:
>
> 1. I purchased forensic software to allow me to trace the origin of
emails.
> 2. Mailed demand letters to individuals and entities that have spammed me.
> Each letter contained the following info:
>        a. A two page copy of RCW 19.190 - WA anti-spam statute
>        b. Copies of the unlawful headers from the email that the
spammers
> sent to me.
>        c. Demand for damages of $500 per violation - the threshold for
> sending a letter was 10 violations or more
> 3. Mailed a total of 30 demand letters to the most egregious violators of
> this law.
>
> Currently, I have drafted a complaint - the draft was based on a template
> from a successful defense of RCW 19.190 in Western WA. I am seeking an
> attorney to "perfect" my complaint so that I may file it in District
Court.
> In the alternative, I may want to hire an attorney to represent me in
court.
>
> An interesting side note is since the demand letters were delivered to
> these spammers, a few have continued to send their spam "flaunting" our
> law. I believe that there is a second cause of action (perhaps harassment)

0003

floyd ivey, at 9:23 AM 9/22/2005 -0700, Re: Help With District Courts Complaints    Page 2 of 3

> for those that have been notified that they are violating the law and that
> continue to do so. Yet, they persist...I, even, have records of spammers
> resuming their spam after I have unsubscribed from their newsletters.
>
> In each of the 30 cases that I have worked on, I have the unlawful email
> and the name and address of the person or entity, which is "responsible"
> for sending the email. There are 30 distinct cases with violations ranging
> from $5,000 to $39,000 each.
>
> Regards,
> Jim Gordon
> 308-0085
> 943-4715
>
> NOTES
>
> A Washington State judge ruled that a company is liable and responsible
for
> the illegal unsolicited electronic mail of its independent
representatives.
> See Ben de Lisle v. Top Secrets, King County District Court, Bellevue
> Division, Cause Number 9801417.
>
> The Washington State Attorney General has initiated lawsuits for
violations
> of the unsolicited commercial e-mail law. See:
>    * State Of Washington v. Jason Heckel [of Oregon], doing business as
> Natural Instincts, Superior Court of The State Of Washington, King County,
> Cause number 98-2-25480-7SEA;
>    * State of Washington v. Sam Khuri [of Georgia], doing business as
> Benchmark Print Supply, Superior Court of The State Of Washington, King
> County, Cause number 99-2-03549-6SEA.
> The Washington State Supreme Court upheld RCW 19.190 (STATE v. HECKEL,
> Cause No. 69416-8) and further substantiated that Washington courts have
> jurisdiction over out-of-state defendants doing business in Washington
State.
>
>
> Cases Where Washington State Small Claims Courts
> Have Accepted Jurisdiction Over Out-Of-State Defendants
> (I will file in District Court for most of my complaints)
>
> ----------
> Kitsap County District Court
> T. Hooper v Galee Industries Y2-1765 (WA) Judgement of $2029 to the
Plaintiff
> T. Hooper v Zing Wireless Y2-943 (CA)
> T. Hooper v Laptop Training Solutions Y2-944 (UT)
> In regards to the above two cases, Judge Holman raised 3.66.100(2) stating
> service out of state is disallowed in District Court. Hooper countered
with
> argument that 19.86.160 does allow it. The Judge said he would consider it
> based on which law is more specific. Apparently the judge concluded
> 19.86.160 is relevant and that 3.66.100 does not pre-empt 19.86.160.
>
> T. Hooper v Laptop Training Solutions Y2-554 (won on default) (UT)
> T. Hooper v National Accounts Inc Y2-492 (continuance til May 9th) (NJ)
> T. Hooper v CD Micro Inc Y2-553 (Plaintiff awarded $1,000 judgement) (OR)
>
> King County District Court, Bellevue Divison
> Y15833 Peacefire & Bennett Haselton v. Red Moss Media Inc. (dba

0004

floyd ivey, 8029-ADV 9/22/2005 -0760, Re: Help With District Courts Complaints    Page 3 of 3

> Funnymoney.com) (CA)
> Y15935 against Power Email Systems Inc.
> Y15937 against On-Site Trading
> Y15939 against Bulk ISP Corporation
> Y15940 against Alan Batts
> Y16068 Peacefire & Bennett Haselton v. Richard Schueler (FL)
> Y17135 Peacefire & Bennett Haselton v. Paulann Allison (ME)
> Y20109 Peacefire & Bennett Haselton v. Keith Gilbert (CA)
>
> King County District Court, Seattle Divison
> Y1-000834 Innovative Access v. National Business & Tax Reduction Services
(MD)
> Y1-5056 Innovative Access v. Stock Communications Group (TX)
> Y1-5058 Innovative Access v. E-Financial Inc.com (NV)
> Y1-6528 Ben Livingston v. Satellite Systems Network (CA)
> Y1-6529 Innovative Access v. Print Doctor (FL)
>

Printed for Jim Gordon <Kamau@charter.net>                    10/2/2005

**EXHIBIT 2**

From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Article from Wired World
Date: Thu, 25 Sep 2003 09:38:24 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

The problem with present resistance to spam is the cost. That is, it will
cost $225/hour for me to explore with no clear ability to find a solution.
Further, should you actually locate a spammer there would be doubt regarding
the ability to collect on any judgment.

In the mean time someone has commenced such a lawsuit. I haven't heard re:
the status for months. And the Attorney Generals of many states are likely
looking at the issue.

Thus others are doing the work at no expense to you. There will be a real
budget needed for you to commence the effort. Please advise if you want to
examine the prospect of going forward.

Floyd


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Thursday, September 25, 2003 9:09 AM
Subject: Article from Wired World


> Floyd:
>
> My domain name - gordonworks.com is under siege. Whether we consider my
> domain name intellectual PROPERTY or personal PROPERTY, this property is
> being encroached upon - to the tune of 4MB+ every day. This encroachment
> displaces my computer's memory with unsolicited - even unlawful commercial
> email.
>
> I have kept records of this spam since 8/6/03. In that time (51 days), I
> have received 122MB of spam. In the past 24 hours, I have received 4.6MB
of
> spam. I am feeling a since of urgency...
>
> One might ask why I don't simply filter and delete these email. I have
been
> filtering and deleting email since 1998. During that time, my daily volume
> of email approached 1500 messages per day. I found that filters can be
> defeated/circumvented - so I spent time revising and updating my filters.
> My collection of spam (over 20,000 messages) now serves one purpose - that
> of being evidence against those who spam me and millions of others.
>
> My spam problem was an imposition on my business and it is an imposition
on
> my personal use of the Internet. Therefore, I have chosen to stop running
> and hiding from spam. I believe that Washington's anti-spam statute was
> designed to prevent much of the abuse that I am experiencing.
>
> The article below discusses the concept of "trespass" as it pertains to
> spam...I experience this sense of being trespassed upon each time that I
> check my email - 6+ times per day.

0019

>
> Thanks for considering my issues.
>
> Best Regards,
> Jim Gordon
>
>
>
>
> Trespassing or Free Speech?
>
> By <http://www.wired.com/news/feedback/mail/1,2330,742,00.html>Ryan
>
Singel<http://www.wired.com/news/feedback/mail/1,2330,742,00.html>5c7a64.jpg
>
> Story location:
>
<http://www.wired.com/news/business/0,1367,58330,00.html>http://www.wired.co
m/news/business/0,1367,58330,00.html
>
> 02:00 AM Apr. 03, 2003 PT
>
> The California Supreme Court heard arguments Wednesday in an appeal to
> determine whether an ex-Intel employee's barrage of e-mails to his former
> colleagues constitutes illegal trespassing on the company's computer
system.
>
> The case, which has been closely watched as a potential test of legal
> limits to free speech on the Internet, was originally
>
<http://appellatecases.courtinfo.ca.gov/search/mainCaseScreen.cfm?dist=0&doc
_id=188342&rc=1>filed
> by Intel against Ken Hamidi, an engineer who sent a series of scathing
> e-mails about Intel's employment practices to company employees after he
> was fired in 1996.
>
> "The case involves whether the Internet is a medium everyone can use in a
> democratic way, or whether a few very large corporations can control the
> Internet and impoverish free speech," said Karl Olson, one of Hamidi's pro
> bono lawyers. "The court took a big chunk out of the First Amendment."
>
> Intel counters that Hamidi's e-mails reduced employees' productivity, made
> them worry that their jobs were in danger and forced the IT department to
> spend hours trying to block his e-mails.
>
> A 2-1 decision by the December 2001 state appeals court agreed with Intel,
> declaring in a majority opinion that "Intel proved more than its
> displeasure with Hamidi's message, it showed it was hurt by the loss of
> productivity...."
>
> Still, Hamidi's attorneys emerged hopeful that California's highest court
> will rule in their favor.
>
> "The majority of the justices seemed to focus on ... whether sending
> someone an e-mail can constitute a trespass, even where there is no
> allegation of damage to the receiving computer," said Gregory Lastowka,
one
> of the attorneys representing Hamidi.
>
> Hamidi's attorneys noted that during Wednesday's hearing, Justice Joyce
> Kennard asked rhetorically whether Intel was claiming damage to its

0020

> computer equipment or that its employees were its property.
>
> In a brief submitted to state Supreme Court justices, Intel discounted
> Hamidi's free speech objections, saying the appeals court ruling "properly
> protects private property without impinging on free speech conducted off
of
> that property." Intel did not respond to requests for comment.
>
> The dispute centers on a bulk e-mailing campaign by Hamidi, who sent six
> messages to a list of more than 30,000 Intel employees over a two-year
> period. In the e-mails Hamidi, who believes he was unfairly fired, asked
> employees to join his <http://www.faceintel.com>anti-Intel group and
> suggested they leave the company.
>
> One e-mail asked, "Are you tired of being victimized, ... redeployed or
> targeted for termination?" Each e-mail included an opt-out provision,
> which, according to Hamidi, only 450 employees used.
>
> After filing suit, Intel obtained a court injunction to stop Hamidi's
> e-mails by using a little-known legal provision called "trespass to
> chattels." By sending the e-mails, the company argued that Hamidi was, in
> effect, trespassing on company property.
>
> State appellate judges upheld the application of the trespass statute to
> the Internet. "The common law adapts to human endeavor," the opinion
> stated. "For example, if rules developed through judicial decisions for
> railroads prove nonsensical for automobiles, courts have the ability and
> duty to change them."
>
> Lastowka, one of Hamidi's lawyers, says the decision suggests the court is
> creating a new law. He argues that the ruling could let companies control
> who hyperlinks to or downloads Web pages from their servers.
>
> Intel rebutted this argument in a recent brief that said there is "little
> substance to Hamidi's alarmist prediction that speech on the Internet
hangs
> in the balance'" and that "Hamidi points to no flood of trespass to
> chattels lawsuits, nor any genuine degradation of the Internet as a
vehicle
> for public debate and discourse."
>
> Lastowka points out that California already has a strict antispam law --
> and that Hamidi's e-mails are implicitly legitimate under that law.
>
> "When the California legislature considered the shape of an antispam
> statute, they decided it was limited to commercial speech," said Lastowka.
>
> Hamidi's lawyers also argue that the trespass statute doesn't apply
because
> Hamidi's e-mails didn't unduly burden Intel's servers, as Intel itself
> admits. In previous cases, AOL and Hotmail used the same statute to sue
> spammers who had overwhelmed their servers and customers' e-mail accounts.
>
> Lee Tien of the <http://www.eff.org>Electronic Frontier Foundation says
> that Hamidi's e-mails don't fall into the same category.
>
> "They weren't commercial, they weren't very bulk, and they were targeted
> only to Intel employees," Tien said.
>
> Before today's hearing, privacy advocates were heartened by the simple
fact

0021

> that the court decided to review the Court of Appeals 2-1 decision.
>
> "Why would they take it unless they are going to reverse it?" asked Tien.
> After the hearing, however, Tien was reluctant to declare victory.
>
> The California Supreme Court is expected to issue its ruling in two to
> eight months.
>
> Tien drew some encouragement, however, from Wednesday's hearing, in which
> some questions seemed influenced by a dissenting opinion in the case
> written by a state appeals justice. In the dissent, Justice Daniel Kolkey
> argued that "Intel seeks not merely to invoke the common law, but to modify
> it in a way that ... would affect the free flow of communication on the
> Internet."
>
> Prior to the hearing, Hamidi's lawyers had suggested it was more likely,
> however, that the Court will reverse on the grounds that Hamidi's e-mails
> have federal labor-law protections. These laws generally allow unions and
> aggrieved employees use of a company's bulletin board, phone system and
> inter-office mail to communicate with other employees.
>
> "The fundamental clash is: What does the Internet mean?" Tien said. "Is the
> Internet a feudal collection of computers that happen to be connected, or
> is it a network where everyone is connected to everyone?"
>
> 5c7cdb.jpg
>
>
>

**EXHIBIT 3**

feivey@3-cities.com, 11:15 AM 9/30/2003 -0700, First spam Complaints

To: feivey@3-cities.com
From: Jim Gordon <res08nqc@verizon.net>
Subject: First spam Complaints
Cc:
Bcc:
Attached: C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftTheodorehansson.doc; C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftAmericanHomeownersASSN.doc;


Floyd:

I have the email documentation, which shows the violations that I allege. I have also "drafted" two complaints. How would you like to proceed? And what costs can we identify at this point?

I believe that we will prevail in these matters. However, I would like to be as frugal as possible on this first lawsuit [I have been unemployed since 7/31/03]. There are 30+ complaints to go.

I'd like to have the first complaint [AHA] filed and sent to the Defendant with a final offer to settle out-of-court.



Regards,
Jim Gordon



1. **American Homeowners Assn. [ 144 emails ] $72,000 claim**
   1100 Summer St.
   Stamford, CT 06905

https://www.ahamembership.com/index.cfm

This company sent me a written "rejection" of my "demand for damages" letter that I sent to them. However, they continue to send me ads that offer free products, which actually would cost me a tiny fee, that is to be charged to my credit card and I would also be obligated to receive their one month trial membership - not so free after all. Their email explicitly proclaims, " Click now and complete the form to get your Gift Now! This offer is with **no obligation** and the gift is yours to keep."


2. **Theodore Hansson [ 94 emails ] $47,000 claim**
   4137 248th Ct. SE
   Issaquah, WA 98029

http://www.esioffers.com/campaigns/thansson/?link=2464

http://www.megawavez.com/hansson/index.html

He sells books...states that people can use his money to buy discounted paper. Some of the subject lines for his email follow:

Subject: Wanna Use My Money?
Subject: Use my money... all of it!
Subject: You can use MY money
Subject: Split the profits 50-50 using MY money

feivey@3-cities.com, 11:15 AM 9/30/2003 -0700, First spam Complaints

Subject: Here's Access to My Money
Subject: Let me do you this favor
Subject: I'll split the profits 50 - 50

**EXHIBIT 4**

**Jamila & Tommy, 01:26 PM 9/30/2003 -0700, Update**

To: "Jamila & Tommy" <jamila@charter.net>
From: Jim Gordon <res08nqc@verizon.net>
Subject: Update
Cc:
Bcc: bonnie.gordon@verizon.net
Attached: C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftAmericanHomeownersASSN.doc; C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftTheodorehansson.doc;

Jamila:

Please hold on to the attachments - they are templates for future litigation. The email accounts for the family have the following totals:

| Name | Total Emails (unresearched) | Unlawful spam (researched) |
|------|------|------|
| Bonnie | 1505 | 153 |
| James | 3409 | 343 |
| Jamila | 1132 | 94 |
| Jay | 1552 | 124 |
| Jon | 1138 | 95 |

The complaints that I drafted for my attorney, Floyd Ivey, are attached. Each unlawful spam could be worth $500 - if we prevail in court

**EXHIBIT 5**

**feivey@3-cities.com, 11:13 AM 12/30/2003 -0800, Status**

To: feivey@3-cities.com
From: Jim Gordon <res08nqc@verizon.net>
Subject: Status
Cc:
Bcc:
Attached:

Floyd:

On Wednesday, the 24th a Superior Court judge gave me an early Christmas present in the form of two temporary restraining orders against two of the companies that have been spamming me. On January 8th, 2004, I will appear in Superior Court to request a permanent injunction against these companies and their agents.

Below are links to the steps that I have taken to stop the spamming.

Here's a link to the online Herald-Standard.
http://www.heraldstandard.com/site/news.cfm?newsid=10686398&BRD=2280&PAG=461&dept_id=480247&rfi=8

http://www.gordonworks.com/spam

http://www.gordonworks.com/spam/TedHansson.htm

http://www.gordonworks.com/spam/CommonwealthMarketingGroup.htm

If I prevail in these initial lawsuits, there are over 70 more anti-spam lawsuits that I wish to file in Superior and District Courts. If you are still interested, in what way do you envision assisting me?

Seasons Greetings,
Jim Gordon

**EXHIBIT 6**

**Akers, Doug E, 08:47 AM 4/4/2005 -0700, RE: FW: Battelle Contract for Review**

To: "Akers, Doug E" <doug.akers@pnl.gov>
From: Jim <Kamau@charter.net>
Subject: RE: FW: Battelle Contract for Review
Cc:
Bcc:
Attached:

Actually it is Doug McKinley v Floyd Ivey

At 07:48 AM 4/4/2005 -0700, you wrote:
  By chance are you working with Dave Broussard?  Good Guy

  Look forward to hear from one of them.

  Take Care

  Doug

  -----Original Message-----
  From: Jim [mailto:Kamau@charter.net]
  Sent: Saturday, April 02, 2005 8:30 AM
  To: Akers, Doug E
  Cc: Shoemaker, Steven V
  Subject: Re: FW: Battelle Contract for Review

  Doug:

  I have not had an opportunity to take this contract to an attorney yet - because the two attorneys that I typically use
  are facing one another - one for me and the other against (yes, it technical is a conflict of interest, but...). The attorney
  that is for me, does work for the Lab, which makes advising me a possible conflict of interest - so, I may go to a third
  attorney...

  I appreciate you diligence on the preparation of this document and will get legal advice as soon as possible.

  Best Regards,
  Jim

  At 07:29 AM 3/7/2005 -0800, you wrote:

    Jim,

    Here it is.  Hopefully it will make it through this time.

    Doug

    -----Original Message-----
    From:  Akers, Doug E
    Sent:  Tuesday, February 22, 2005 12:07 PM
    To:    'Jim@gordonworks.com'
    Cc:    Shoemaker, Steven V; Strycker, Forest E Jr
    Subject:    Battelle Contract for Review

    Jim,

**Akers, Doug E, 08:47 AM 4/4/2005 -0700, RE: FW: Battelle Contract for Review**

I've attached a draft copy of our standard master contract for your review. If you need to make changes, please use the track changes option in Word. Looking forward to hearing from you.

Take Care

Doug Akers, C.P.M.
Associate Manager, Contracts
509-372-6722  Fax 509-372-6884

<<Master Agreement.doc>>

1

2                                CERTIFICATE OF SERVICE

          I hereby certify that on *October 3*, 2006, I electronically filed the
3
     foregoing Declaration of James S. Gordon, Jr. in Support of Motion to Disqualify
4
     Counsel with the Clerk of the Court using the CM/ECF system, which will send
5
     notification of such filing to the following:  Floyd E. Ivey,
6

7                                        Adana Lloyd

8                                        MERKLE, SIEGEL, & FRIEDRICHSEN, P.C.
                                         DATE: ~~SEPTEMBER~~ *October* 3 , 2006
9

10                                       BY: *Adana Lloyd*
                                             ADANA LLOYD
11                                       1325 FOURTH AVENUE, SUITE 940
                                                SEATTLE, WA 98101
12                                       TELEPHONE: 206.624.9392
                                                FAX: 206.624.0717
13

14

15

16

17

18

19

20

21

22

23

24

25   -5
     DECLARATION OF JAMES S. GORDON, JR.                    **MERKLE SIEGEL & FRIEDRICHSEN**
     IN SUPPORT OF MOTION TO DISQUALIFY DEFENDANTS'              1325 Fourth Ave., Suite 940
     COUNSEL                                                        Seattle, WA 98101
                                                                  Phone: 206-624-9392
                                                                   Fax: 206-624-0717