Omni Innovations LLC v. Ascentive LLC et al                                                    Doc. 48

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 1 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 1 of 36



1

2    Floyd E. Ivey                                          Hon. Judge T. S. Zilly
     Liebler, Ivey, Connor, Berry & St. Hilaire
3    1141 N. Edison, Suite C
     P.O. Box 6125
4    Kennewick, WA 99336
     Telephone (509) 735-3581
5    Fax (509) 735-3585
     Attorneys for Defendant
6
     DOUGLAS E. MCKINLEY, JR.
7    Attorney At Law
     P.O. Box 202 Richland, Washington 99352
8    509-628-0809
     Fax (509) 628-2307
9    Attorney for Plaintiff

10   ROBERT J. SIEGEL
     1325 4th Ave Ste 940
11   Seattle, WA
     98101-2509

12

13

14              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF WASHINGTON
15

16   OMNI INNOVATIONS LLC et al              )   NO.  CV-06-01284-TSZ
                                             )
17                                           )
                    Plaintiffs               )   DEFENDANT'S
18                                           )   MEMORANDUM IN
     ASCENTIVE, LLC                          )   RESPONSE TO PLAINTIFFS'
19   a Delaware Limited Liability Company,   )   MOTION TO DISQUALIFY
                                             )   COUNSEL FLOYD E. IVEY
20                  Defendant                )
     _____ )
21

22   **PLAINTIFFS' FILING IN THE WESTERN DISTRICT IS FORUM
23   SHOPPING.**

24   **PLAINTIFFS' MOTION TO DISQUALIFY IS A *"MOTION TO
     RECONSIDER" JUDGE VAN SICKLE'S DENIAL OF THE SAME MOTION
25   TO DISQUALIFY IN GORDON V. IMPULSE MARKETING GROUP, IN
     THE EASTERN DISTRICT OF WASHINGTON*.**

26       The Principal of Omni Innovations LLC is Mr. James Gordon.  Mr. Gordon
27
     has brought multiple cases alleging violation of RCW 19.190, the Can-Spam Act
28

     Defendant's Memorandum in Response to Motion to Disqualify -       LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
     1.                                                                          Attorneys at Law
     Z:\IPClient\Ascentive LLC v. Gordon\Ascentive v. Omni                       P.O. Box 6125
     Innovations\Motions\MotionDisqualify\Motion                        Kennewick, Washington 99336-0125
     ToDisqual.DEF.Response.061020.wpd                                         (509) 735-3581

                                   EXHIBIT  2   pages 1-36
                          Second Emergency Petition Writ
                               Mandamus

1   of 2003, RCW 19.86, all relating to transmission of electronic mail messages in

2   violation of said statutes.  Plaintiffs' present Motion to Disqualify has been

3   considered and denied by Eastern District Judge Van Sickle in Gordon v. Impulse

4   Marketing Group, Inc., CV-04-5125-FVS.  Judge Van Sickle's Order of May 15,

5   2006, is attached as Exhibit 1.  The Court's Order re: Disqualification commences

6   at page 2 of the Order and Page 8 of this filing.

7        There is identity between Omni Innovations LLC and Mr. James Gordon as

8   seen in Mr. Gordon's Declaration Supporting this Motion to Disqualify.  The

9   documents  supporting the Motion to Disqualify in Gordon v. Impulse are the

10  same as the document appended to Mr. Gordon's present Declaration.  Mr. Gordon

11  has not provided the present court with new facts or legal authority.

12       Reconsideration is subject to Western District Local Rule CR7(h) which

13  requires either manifest error in the prior ruling or a showing of new facts or legal

14  authority which could not have been brought to its attention earlier with

15  reasonable diligence.  Mr. Gordon contends that Ivey represented Mr. Gordon re:

16  Omni Innovations LLC but produces no evidence.  Attorney Ivey denies that legal

17  assistance was provided to Mr. Gordon re: Omni Innovations LLC.

18       Plaintiffs' Motion to Amend to a First Amended Complaint to add Omni

19  Innovations LLC, in the Eastern District, was denied.  Thereafter,

20  contemporaneous with the referral of Gordon v. Ascentive to the Discovery

21  Master, Judge Van Sickle vacated the Scheduling of the case.  The Eastern District

22  case of Gordon v. Ascentive remains unscheduled at this time.

23       Plaintiff's proper action, re: Omni Innovations LLC would have been to ask

24  the Eastern District Court, in light of the schedule being vacated, to again consider

25  adding the additional plaintiff of Omni.  Rather than petition Judge Van Sickle,

26  Plaintiff has sought a new court within which to bring the same motions which

27  have been brought and decided in the Eastern District.  Federal Courts have held

28

Defendant's Memorandum in Response to Motion to Disqualify -
2.
Z:\IPClient\Ascentive LLC v. Gordon\Ascentive v. Omni
Innovations\Motions\MotionDisqualify\Motion
ToDisqual.DEF.Response.061020.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1  that prevention of forum shopping promote wise judicial administration. *American*

2  *Intern. Underwriters (Philippines), Inc. v. Continental Ins. Co.*843 F.2d 1253,

3  1259-60 (9th Cir. Cal. 1988). Subjecting the Western District to the identical

4  issues addressed over the past months by the Eastern District is an obvious assault

5  on Judicial Economy.

## ATTORNEY FLOYD E. IVEY'S HISTORY OF DEFENDING CASES BROUGHT BY PLAINTIFF MR. JAMES GORDON

Plaintiffs' Motion to Disqualify counsel Floyd E. Ivey (Ivey) is supported

by the Declaration of James S. Gordon. Mr. Gordon represents that he is the

principal member of Omni Innovations, LLC. Mr. Gordon, his wife and children

and others are Plaintiff or Third Party Defendants in other cases defended by Ivey

and involving the identical causes of action as alleged in the present matter of

Omni v. Ascentive.

Ivey is co-counsel in the Federal District Court for the Eastern District of

Washington, Gordon v. Impulse Marketing Group Inc., CV-04-5125-FVS where

attorney Ivey represents Impulse Marketing Group Inc and Third Party Plaintiffs

in their Cross-Complaint against Mr. Gordon's Wife Bonnie Gordon, Mr.

Gordon's children James S. Gordon III, Jonathan Gordon, Jamila Gordon and Mr.

Gordon's associates Robert Pritchett and Emily Abbey. Attorney Ivey's

appearance in Impulse was entered January 2005. At the time of Mrs. Gordon's

raising issues of disqualification in Impulse, attorney Ivey had filed approximately

200 separate pleadings with the Eastern District.

Attorney Ivey is counsel defending, in Federal District Court for the Eastern

District of Washington in Gordon v. Ascentive LLC and Adam Schran, CV-05-

5079-FVS, where Ivey represents Ascentive LLC and Adam Schran.

Attorney Ivey was counsel in the Benton County State of Washington

matter of Gordon v. Efinancial LLC and Rowell, Benton County Superior 05-2-

01489-7, until the case was moved to King County on my Motion for Change of

Defendant's Memorandum in Response to Motion to Disqualify -
3.
Z:\IPClient\Ascentive  LLC  v.  Gordon\Ascentive  v.  Omni
Innovations\Motions\MotionDisqualify\Motion
ToDisqual.DEF.Response.061020.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1   Venue.

2       Each of these cases are brought by Plaintiff Gordon relative to RCW

3   19.190, the Can-Spam Act of 2003 and RCW 19.86.

4

5   **HISTORY OF GORDON V. ASCENTIVE IN THE EASTERN DISTRICT**

6       The issues and parties are virtually identical in the present Western District

7   case as is presently found in Gordon v. Ascentive, Eastern District. The Plaintiffs,

8   with Mr. Gordon as the principal for Omni Innovations LLC, and with Ms. Abbey

9   as a Plaintiff, are have significant commonality with the Eastern District case of

10  Gordon v. Impulse. The exhibits appended to Mr. Gordon's Declaration in

11  Support of Disqualification are identical to the Exhibits submitted by Mrs. Gordon

12  in Gordon v. Impulse.

13      The Honorable Judge Fred Van Sickle has presided over both Gordon v.

14  Impulse and Gordon v. Ascentive. The issues of Omni Innovation LLC v.

15  Ascentive will be very similar if not identical to those of Gordon v. Ascentive in

16  the Eastern District. The Federal Court in the Eastern District has heard and

17  decided the following regarding Ascentive:

18      1.  Motion to Dismiss for Lack of Jurisdiction. The Court denied with

19  leave to reconsider.

20      2. Motions by Defendant to Compel Plaintiff's Response to Discovery

21  resulting in the Court's Order referring the matter to Discovery Master the

22  Honorable Judge Clarke. Defendant's Motion to Compel is presently pending

23  before the Discovery Master.

24      3. Motion to Dismiss First Amended Complaint which is presently pending

25  before Judge Van Sickle.

26      The foregoing Motions and Decisions by Judge Van Sickle will be

27  presented with Defendants' Motion for Change of Venue

28

Defendant's Memorandum in Response to Motion to Disqualify -
4.
Z:\IPClient\Ascentive LLC v. Gordon\Ascentive v. Omni
Innovations\Motions\MotionDisqualify\Motion
ToDisqual.DEF.Response.061020.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1    Additionally, and of immediate importance for the Western District, is the

2  fact that Judge Van Sickle has decided the identical Motion to Disqualify attorney

3  Ivey in the Impulse case.

4

5  **PLAINTIFF'S MOTION TO DISQUALIFY**

6    In Gordon v. Impulse, Mr. Gordon's wife, Bonnie Gordon, and Mr.

7  Gordon's daughter Jamila Gordon included accusations against attorney Ivey in

8  Declarations.  The accusations suggested that Ivey had represented Plaintiff Mr.

9  Gordon and that his representation of Impulse was improper thus raising the issue

10  of disqualification.  Ivey brought the issue to the immediate attention of the Court.

11    The entirety of the Eastern District pleadings re: Motion to Disqualify Floyd

12  E. Ivey by Mrs. Bonnie Gordon in Gordon v. Impulse are appended hereto as

13  follows:

14    1. Exhibit 2 is the "Declaration [of Bonnie Gordon] and Response to

15  Impulse and Ivey Initial Memorandum...Re: Disqualification".  Exhibit 2 is

16  appended hereto.  Exhibits 3 and 4 are files as attachments separate from this

17  Memorandum.

18    The Exhibits affixed to Mr. Gordon's present Declaration are coorelated

19  with Exhibit 2 as follows:

20    Mr. Gordon Ex 1 is Mrs. Gordon's Ex. 4 at Mrs. Gordon's Dec. P. 31.

21    Mr. Gordon Ex. 2 is Mrs. Gordon's Ex. 5 at Mrs. Gordon's Dec. P. 32.

22    Mr. Gordon Ex. 3 is Mrs. Gordon's Ex. 6 at Mrs. Gordon's Dec. P. 33.

23    Mr. Gordon Ex. 4 is Mrs. Gordon's Ex. 7 at Mrs. Gordon's Dec. P. 34.

24    Mr. Gordon Ex. 5 is Mrs. Gordon's Ex 8 at Mrs. Gordon's Dec. 35.

25    Mr. Gordon Ex. 6 is Mrs. Gordon's Ex. 9 at Mrs. Gordon'e Dec. P. 36.

26    2. Exhibit 3 is Defendant and Third Party..."AND" Initial Memorandum

27  Response to third Party Defendant's Motion to Disqualify Counsel"

28

Defendant's Memorandum in Response to Motion to Disqualify -
5.
Z:\IPClient\Ascentive  LLC  v.  Gordon\Ascentive v.  Omni
Innovations\Motions\MotionDisqualify\Motion
ToDisqual.DEF.Response.061020.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

1      3.  Exhibit 4 is Memorandum: Defendant and Third Party Plaintiff's

2   Response to Third Party Defendant's Assertions Re: Disqualification.

3

4   **CONCLUSION**

5      Defendants will move for a change of Venue to the Eastern District.

6   Defendants request the Court to deny Plaintiff's Motion to Disqualify.

7      Dated this 20th day of October, 2006.

8

9         S/FLOYD E. IVEY
      FLOYD E. IVEY, WSBA 6888

10        Attorneys for Defendants

11

12

   I hereby certify that on October 20, 2006, I electronically filed **Defendant's**

13  **Memorandum in Response to Plaintiff's Motion to Disqualify** with the Clerk of
the Court using the CM/ECF System which will send notification of such filing to

14  Plaintiffs' counsel Robert J. Siegel and Douglas McKinley.
      S/ FLOYD E. IVEY

15

16        FLOYD E. IVEY

17

18

19

20

21

22

23

24

25

26

27

28

Defendant's Memorandum in Response to Motion to Disqualify -
6.
Z:\IPClient\Ascentive LLC v. Gordon\Ascentive v. Omni
Innovations\Motions\MotionDisqualify\Motion
ToDisqual.DEF.Response.061020.wpd

LIEBLER, IVEY, CONNOR, BERRY & ST. HILAIRE
Attorneys at Law
P.O. Box 6125
Kennewick, Washington 99336-0125
(509) 735-3581

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 7 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 7 of 36
Case 2:04-cv-05125-FVS    Document 370    Filed 05/15/2006

1

UNITED STATES DISTRICT COURT

2

EASTERN DISTRICT OF WASHINGTON

3

4

5

JAMES S. GORDON, JR., an individual
residing in Benton County, Washington,

No. CV-04-5125-FVS

6

Plaintiff,

7

**ORDER**

8

v.

9

10

IMPULSE MARKETING GROUP, INC., a Nevada
Corporation,

11

Defendant.

12

IMPULSE MARKETING GROUP, INC.,

13

Third-Party Plaintiff,

14

15

v.

16

BONNIE GORDON, JAMES S. GORDON, III,
JONATHAN GORDON, JAMILA GORDON, ROBERT
PRITCHETT and EMILY ABBEY,

17

18

Third-Party Defendants.

19

20

**BEFORE THE COURT** is Impulse Marketing's Motion to Compel and

21

Motion for Sanctions (Ct. Rec. 235); Motion to Compel and Request for

22

Sanctions brought by Third-Party Defendants James Gordon, III, (Ct.

23

Rec. 298), Jonathan Gordon (Ct. Rec. 300), Bonnie Gordon (Ct. Rec.

24

256), Robert Pritchett (Ct. Rec. 259); Amended Motion to Compel and

25

Request for Sanctions brought by Bonnie Gordon (Ct. Rec. 274), and

26

Jamila Gordon (Ct. Rec. 270); Defendant's Motion to Strike portions

ORDER - 1

*Exhibit 1*

*7*

EXHIBIT _5_ *to Petion for*
*Writ of Mandamus*

Case 2:06-cv-01284-JCC   Document 48   Filed 12/22/2006   Page 8 of 36
Case 2:06-cv-01284-TSZ   Document 16   Filed 10/20/2006   Page 8 of 36
Case 2:04-cv-05125-FVS   Document 370   Filed 05/15/2006

1   of the declarations the Third-Party Defendants submitted in support

2   of their motions.  (Ct. Rec. 325).

3       Third-Party Plaintiff Impulse Marketing ("Impulse Marketing") is

4   represented by Floyd Ivey, Sean Moynihan, and Peter Glantz.  Third-

5   Party Defendants are proceeding *pro se*.

6       **Motions to Disqualify Counsel**

7       Although the motions brought by Third-Party Defendants Bonnie

8   and Jamila Gordon are captioned as motions to compel, these motions

9   also request the Court disqualify Impulse Marketing's attorney Floyd

10  Ivey.  Bonnie and Jamila Gordon are the wife and daughter,

11  respectively, of the Plaintiff, James Gordon, Jr.  Both Bonnie and

12  Jamila Gordon allege Mr. Ivey previously represented the Plaintiff in

13  legal matters and that this previous representation amounts to a

14  conflict of interest.  Thus, they contend Mr. Ivey should be

15  disqualified from representing Impulse Marketing because such

16  representation places Mr. Ivey in conflict with the interests of

17  Plaintiff.

18      1.   <u>Standing</u>

19      Before the Court addresses whether Mr. Ivey's representation of

20  Impulse Marketing presents a conflict of interest, the Court must

21  address the threshold question of standing.  Standing is a

22  jurisdictional matter that goes to the power of a federal court to

23  decide an issue placed before it.  The standing doctrine "embraces

24  several judicially self-imposed limits on the exercise of federal

25  jurisdiction, such as the general prohibition on a litigant's raising

26  another person's legal rights...."  *Allen v. Wright*, 468 U.S. 737,

ORDER - 2

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 9 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 9 of 36
Case 2:04-cv-05125-FVS    Document 370    Filed 05/15/2006

750-51, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). Neither the United States Supreme Court nor the Ninth Circuit has addressed the particular issue of whether the standing doctrine bars a nonclient party from moving to disqualify the opposing party's counsel on the grounds of a conflict of interest. *See FMC Techs., Inc. v. Edwards*, -- F. Supp. 2d --, 2006 WL 624454, *2 (W.D. Wash. 2006). There is a split of authority on this issue. *Id.* (citing *Colyer v. Smith*, 50 F.Supp.2d 966, 969 (C.D. Cal. 1999)).

In *Colyer*, the district court noted that under the majority view on this issue "only a current or former client of an attorney has standing to complain of that attorney's representation of interests adverse to that current or former client." *Colyer*, 50 F.Supp.2d at 969 (citing *In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976) (stating that "courts do not disqualify an attorney on the grounds of conflict of interest unless the former client moves for disqualification.")). However, the *Colyer* court acknowledged the possibility of nonclient standing where an "unethical change of sides was manifest and glaring" or an ethical violation was "open and obvious," confronting the court with a "plain duty to act." *Colyer*, 50 F.Supp.2d at 969 (citing *Yarn Processing*, 530 F.3d at 89). Similarly, the minority view is that a nonclient litigant may bring a motion to disqualify. *See Colyer*, 50 F.Supp.2d at 970-71 (citing *Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir. 1984)). "Like the exception to the majority view, the minority view relies in part on the 'court's well recognized power to control the conduct of the attorneys practicing before it.'" *FMC Techs., Inc.*, 2006 WL

ORDER - 3

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 10 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 10 of 36
Case 2:04-cv-05125-FVS    Document 370    Filed 05/15/2006

1  624454,*2 (citing *Colyer*, 50 F.Supp.2d at 970).

2      In addressing the standing question, the *Colyer* court held that

3  a nonclient litigant "must establish a personal stake in the motion

4  to disqualify sufficient to satisfy the irreducible constitutional

5  minimum of Article III." *FMC Techs., Inc.*, 2006 WL 624454, *3

6  (citing *Colyer*, 50 F.Supp.2d at 971). Further, the *Colyer* court

7  noted that "where an ethical breach so infects the litigation in

8  which disqualification is sought that it impacts the moving party's

9  interest in a just and lawful determination of her claims, she may

10  have the constitutional standing needed to bring a motion to

11  disqualify based on a third-party conflict of interest or other

12  ethical violation." *FMC Techs., Inc.*, 2006 WL 624454, *3. Like the

13  court in *Colyer*, the district court in *FMC Technologies, Inc.* adopted

14  the rule that "nonclient litigants may, under proper circumstances,

15  bring motions to disqualify counsel based on conflicts of interest."

16  2006 WL 624454, *3.

17      Although the Ninth Circuit has not decided the issue before the

18  Court, the question was presented in *Kasza v. Browner*, 133 F.3d 1159

19  (9th Cir. 1998). In *Kasza*, the court noted that as "a general rule,

20  courts do not disqualify an attorney on the grounds of conflict of

21  interest unless the former client moves for disqualification."

22  *Kasza*, 133 F.3d at 1171 (quoting *United States v. Rogers*, 9 F.3d

23  1025, 1031 (2d Cir. 1983) (quoting in turn *In re Yarn Processing

24  Patent Validity Litig.*, 530 F.2d 83, 88 (5th Cir. 1976))). However,

25  the *Kasza* court did not decide the issue because it held there was no

26  basis for disqualification even if the court assumed the plaintiff

ORDER - 4

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 11 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 11 of 36
Case 2:04-cv-05125-FVS    Document 370    Filed 05/15/2006

had standing.  133 F.3d at 1171.

In the present case, without making a final determination on whether it should adopt the majority or minority view, the Court is mindful of the outcome under each view.  If the Court adopts the majority view, Third-Party Defendants Bonnie and Jamila Gordon do not have standing to move to disqualify Mr. Ivey.  If the Court adopts the minority view, Bonnie and Jamila Gordon, under the proper circumstances, have standing to bring a motion to disqualify Mr. Ivey based on an alleged conflict of interest between Plaintiff and Mr. Ivey.  Under the minority view, Bonnie and Jamila Gordon must show "the ethical conflict at issue here sufficiently impacts the 'just and lawful determination' of their claims and that the conflict involved is so intertwined with the current litigation that this Court must consider [the] motion to disqualify[.]" *FMC Techs., Inc.*, 2006 WL 624454, *3.  Assuming, without deciding, that Bonnie and Jamila have standing to bring this motion to disqualify, the Court proceeds to review the merits of the motion.

2. **Disqualification of Floyd Ivey**

When faced with an allegation that an attorney's representation presents a conflict of interest, it is "the duty of the district court to examine the charge, since it is that court which is authorized to supervise the conduct of the members of its bar." *Gas-A-Tron of Ariz. v. Union Oil Co. of Calif.*, 534 F.2d 1322, 1324 (9th Cir. 1976).  The Local Rules for the Eastern District of Washington do not specifically adopt the provisions of the Washington Rules of Professional Conduct as ethical rules governing the practice of

ORDER - 5

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 12 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 12 of 36
Case 2:04-cv-05125-FVS    Document 370    Filed 05/15/2006

1    lawyers before the courts in this district.  However, the Local Rules

2    grant the Court authority to discipline any attorney who violates the

3    Washington Rules of Professional Conduct.[1]  Thus, the Washington

4    Rules of Professional Conduct shall govern the Court's

5    disqualification analysis.

6        Here, Bonnie Gordon alleges Mr. Ivey participated in numerous

7    conversations with the Plaintiff regarding spamming, including

8    conversation related to Impulse Marketing.  Further, she points to

9    several emails in which Mr. Ivey and the Plaintiff communicated about

10   the possibility of Mr. Ivey assisting the Plaintiff in filing

11   lawsuits for violations of Washington's anti-spam statute.  Mr. Ivey

12   acknowledges he provided legal services to the Plaintiff in the past,

13   but contends those services were unrelated to the pending litigation.

14   With respect to the current litigation, Mr. Ivey contends his

15   communication with the Plaintiff included an exchange of general

16   statements, but there was never any formal representation.

17       These allegations implicate Rule 1.9 of the Rules of

18   Professional Conduct, which states:

19           A lawyer who has formerly represented a client in a
             matter shall not thereafter:
20           (a) Represent another person in the same or a
             substantially related matter in which that person's
21           interests are materially adverse to the interests of the
             former client unless the former client consents in writing
22           after consultation and a full disclosure of the material
             facts; or

23

24   _____

25   [1]  See LR 83.3 ("This Court may impose discipline on any
     attorney practicing before this Court, ... who engages in conduct
     violating applicable Rules of Professional Conduct of the
26   Washington State Bar, or who fails to comply with the rules or
     orders of this Court.").

ORDER - 6

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 13 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 13 of 36
Case 2:04-cv-05125-FVS    Document 370    Filed 05/15/2006

1          (b) Use confidences or secrets relating to the
representation to the disadvantage of the former client,
2          except as rule 1.6 would permit.

3  Wash. Rules of Prof'l Conduct R. 1.9 (2005).  Under Rule 1.9(a), the

4  significant elements include (1) whether the conflict involves a

5  *former client*; (2) whether the subsequent representation is

6  *materially adverse* to the former client; and (3) whether the matters

7  are *substantially related*.  *Id; see also Trone v. Smith*, 621 F.2d

8  994, 998 (9th Cir. 1980).

9      Here, it is clear Plaintiff has not consented to Mr. Ivey's

10  representation of Impulse Marketing, but it is not clear whether

11  Plaintiff was ever a "former client" of Mr. Ivey.  Assuming, without

12  deciding, that Plaintiff was a former client of Mr. Ivey, Bonnie and

13  Jamila Gordon must also show the matters currently at issue are

14  substantially related to the subject matter of the former

15  representation.  *Sanders v. Woods*, 121 Wash.App. 593, 597-98, 89 P.3d

16  312 (Div. 3, 2004); *Trone*, 621 F.2d at 996 ("The relevant test for

17  disqualification is whether the former representation is

18  "substantially related" to the current representation.")  The

19  determination of whether the two representations are substantially

20  related turns on whether the lawyer was so involved in the former

21  representation that he can be said to have switched sides.  *Sanders*,

22  121 Wash.App. at 598, 89 P.3d 312.

23      Here, the facts of the case reveal that on September 22, 2003,

24  Plaintiff sent Mr. Ivey an unsolicited email in which Plaintiff

25  outlined the procedural steps he had taken to reduce the spam he had

26  been receiving.  Plaintiff also explained in this email that he had

ORDER - 7

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 14 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 14 of 36
Case 2:04-cv-05125-FVS    Document 370    Filed 05/15/2006

1   drafted a complaint and was "seeking an attorney to 'perfect' [his]

2   complaint so that [he could] file it in District Court." (Ct. Rec.

3   283-2, at 52.). In the alternative, Plaintiff stated he "*may* want to

4   hire an attorney to represent [him] in court." *Id.* (emphasis added).

5   In response, Mr. Ivey said he was interested but encouraged Plaintiff

6   to contact the Attorney General. *Id.* In response, Plaintiff

7   forwarded Mr. Ivey a copy of an email Plaintiff previously sent to

8   the Attorney General. In the email to the Attorney General,

9   Plaintiff explained he had received over 12,000 unsolicited

10  commercial email (spam) in the past month, that he had successfully

11  identified the origin of some of those emails, and that he had sent

12  demand letters to the senders, citing the Washington anti-spam

13  statute. Plaintiff suggested to the Attorney General that the State

14  of Washington "turn this proverbial lemon into lemonade--making spam

15  a "profit center" for the State of Washington as well as other

16  organizations within the State." (Ct. Rec. 283-2, at 56).

17      On September 25, 2003, Plaintiff sent another email to Mr. Ivey.

18  (Ct. Rec. 283-2, at 57). Plaintiff explained that the amount of spam

19  he was receiving was becoming an imposition on his business and on

20  his personal use of the internet and that he believed Washington's

21  anti-spam statute was designed to prevent the "abuse" he was

22  experiencing. *Id.* Plaintiff closed his email by thanking Mr. Ivey

23  for considering the issues. *Id.* at 58. Mr. Ivey responded by

24  stating that his attorney services would cost $225 per hour and that

25  he could not guarantee a solution. Mr. Ivey closed his email by

26  stating there would be a "real budget needed ... to commence the

ORDER - 8

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 15 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 15 of 36
Case 2:04-cv-05125-FVS    Document 370    Filed 05/15/2006

effort.  Please advise if you want to examine the prospect of going

forward." *Id.* at 57.

On September 30, 2003, Plaintiff sent another email to Mr. Ivey,
in which Plaintiff explained that he had email documentation showing
the violations he alleged and had drafted two complaints.  (Ct. Rec.
295-1, at 15).  Plaintiff asked Mr. Ivey how he would like to proceed
and requested Mr. Ivey identify the proposed costs.  *Id.*  Plaintiff's
next email is dated December 30, 2003.  (Ct. Rec. 295-1, at 17).
From the context of that email, it appears Plaintiff chose to proceed
*pro se* and filed the complaints in superior court against two
companies.  In the email, Plaintiff told Mr. Ivey that a superior
court had granted Plaintiff's request for temporary restraining
orders against these two companies.  *Id.*  Plaintiff asked Mr. Ivey if
he was still interested and in what way he envisioned assisting the
Plaintiff.  *Id.*  Beyond these emails, the record does not reveal any
other contact between Mr. Ivey and Plaintiff.

After reviewing these emails, the Court concludes Mr. Ivey's
representation of Impulse Marketing is not substantially related to
any previous representation of Plaintiff.  The emails reveal Mr. Ivey
never offered any formal legal advice and never reviewed any legal
pleadings for Plaintiff.  Further, it appears Plaintiff declined to
examine the prospect of hiring Mr. Ivey and chose instead to proceed
*pro se* with his anti-spam case.  In determining whether a conflict of
interest exists, the "underlying concern is the possibility, or the
appearance of the possibility, that the attorney may have received
confidential information during the prior representation that would

ORDER - 9

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 16 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 16 of 36
Case 2:04-cv-05125-FVS    Document 370    Filed 05/15/2006

1  be relevant to the subsequent matter in which disqualification is

2  sought." *Sanders*, 121 Wash.App. at 599, 89 P.3d 312. Here, the

3  emails produced by Mr. Ivey show no confidential information was

4  disclosed. Further, Bonnie and Jamila Gordon have not presented any

5  evidence providing even the appearance of the possibility that

6  confidential information was disclosed. For these reasons, the Court

7  determines Mr. Ivey's representation of Impulse Marketing does not

8  present a conflict of interest. Therefore, Bonnie and Jamila

9  Gordon's motions to disqualify Floyd Ivey are denied.

10      ***Impulse Marketing's "Second" Motion to Compel***

11      On April 18, 2006, Impulse Marketing re-noted for hearing its

12  "First Motion to Compel." The Court previously denied this motion to

13  compel, directing the parties to meet and confer in an attempt to

14  resolve their discovery problems. It is not clear from the record

15  whether the parties did in fact "meet and confer" but Impulse

16  Marketing continues to argue Plaintiff is not providing adequate

17  responses to Defendant's discovery requests. Plaintiff objects to

18  the motion to compel, arguing the alleged "deficiencies" in

19  Plaintiff's responses are actually Impulse Marketing's "improper

20  demands." The Court determines it is appropriate and necessary to

21  refer the parties' discovery dispute to a discovery master.

22  Therefore, Impulse Marketing's motion to compel is denied and an

23  Order referring this matter to a discovery master will be

24  forthcoming.

25      ***Third-Party Defendants' Motions to Compel and for Sanctions***

26      Third-Party Defendants each allege Impulse Marketing failed to

ORDER - 10

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 17 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 17 of 36
Case 2:04-cv-05125-FVS    Document 370    Filed 05/15/2006

1  make the "required Rule 26 disclosures" and "provided evasive,

2  incomplete disclosure, answer, or response to discovery propounded

3  by" [sic] Third-Party Defendants.  In support of their motions to

4  compel, Third-Party Defendants provided copies of some of their

5  interrogatories and Impulse Marketing's answers.  In response to many

6  of Third-Party Defendants' interrogatories, Impulse Marketing

7  asserted the standard ambiguous, irrelevant and overbreadth

8  objections.  Because Third-Party Defendants failed to cite any legal

9  authority or provide any legal analysis in response to Impulse

10 Marketing's objections to the propounded discovery requests, it is

11 difficult for the Court to analyze and resolve the discovery dispute.

12 Thus, the Court determines it is necessary to refer the parties'

13 discovery dispute to a discovery master.  Therefore, Third-Party

14 Defendants' motions to compel are denied and an order referring this

15 matter to a discovery master will be forthcoming.  Accordingly,

16     **IT IS HEREBY ORDERED:**

17     1.  Impulse Marketing's Motion to Compel and Motion for

18 Sanctions (**Ct. Rec. 235**) is **DENIED**.

19     2.  Motions to Compel and Request for Sanctions brought by

20 Third-Party Defendants James Gordon, III, (**Ct. Rec. 298**), Jonathan

21 Gordon (**Ct. Rec. 300**), Bonnie Gordon (**Ct. Rec. 256**), Robert Pritchett

22 (**Ct. Rec. 259**) are **DENIED**.

23     3.  Amended Motions to Compel and Request for Sanctions brought

24 by Bonnie Gordon (**Ct. Rec. 274**) and Jamila Gordon (**Ct. Rec. 270**) are

25 **DENIED; Bonnie and Jamila Gordon's request to disqualify Floyd Ivey**

26 **are denied.**

ORDER - 11

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 18 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 18 of 36
Case 2:04-cv-05125-FVS    Document 370    Filed 05/15/2006

4.   Defendant's Motion to Strike (**Ct. Rec. 325**) is **MOOT**.

5.   Bonnie Gordon's Motion to Expedite (**Ct. Rec. 337**) is **MOOT**.

6.   Bonnie Gordon's Motion to Strike (**Ct. Rec. 339**) is **MOOT**.

7.   Jamila Gordon's Motion to Expedite (**Ct. Rec. 342**) is **MOOT**.

8.   Jamila Gordon's Motion to Strike (**Ct. Rec. 344**) is **MOOT**.

**IT IS SO ORDERED.**   The District Court Executive is hereby
directed to enter this Order and furnish copies to counsel **AND to the**
**Third-Party Defendants who are proceeding** *pro se*.

**DATED** this 15th day of May, 2006.

                        s/ Fred Van Sickle
                        Fred Van Sickle
                United States District Judge

ORDER - 12

MAR 2 0 2006

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MAR 1 7 2006

JAMES R. LARSEN, CLERK
_____ DEPUTY
RICHLAND, WASHINGTON

1
2
3
4
5
6
7
8

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN
9
DISTRICT OF WASHINGTON AT RICHLAND
10

11   James S. Gordon, Jr., Plaintiff,        )   Case No.: CV-04-5125-FVS
                                             )
12          vs.                              )
                                             )   DECLARATION AND
13   Impulse Marketing Group, Inc.,          )   RESPONSE TO IMPULSE AND
                                             )   IVEY INITIAL MEMORANDUM
14   Defendant                               )   RESPONSE RE: THIRD PARTY
                                             )   DEFENDANT'S MOTION TO
15                                           )   COMPEL AND MOTION TO
                                             )   DISQUALIFY
16   Impulse Marketing Group, Inc.,          )
                                             )
17   Third-Party Plaintiff,
18   v.
19   Bonnie F. Gordon, Third-Party
20   Defendant
                                    _____
21   TO: Clerk of the Court
22   AND TO: Floyd E. Ivey, Attorney for Third-Party Plaintiff
23   AND TO: Peter J. Glantz and Sean A. Moynihan
24
25

*Exhibit 2*

19

Bonnie F. Gordon declares as follows:

1)  I, Bonnie F. Gordon, am a named third party defendant in the above captioned lawsuit. I am over the age of 18 and am otherwise competent to testify.

2)  Commonwealth Marketing Group (CMG) – whose contract has already been introduced into evidence by Impulse sent a "cease and desist" letter to Impulse on February 9, 2004 to stop it from sending emails to "gordonworks.com" Impulse is withholding documents like this one from me (us), documents which will substantiate the contentions made by me (us). **Exhibit 1**

3)  Prior to this letter (Ex 1) by CMG, Impulse assured CMG that it was Can-Spam compliant. **Exhibit 2** However, Impulse continued to send spam or unwanted email to gordonworks.com through December 2005 – a per se violation of Can-Spam, despite its "assurances" of using suppression/scrub lists and the like. And it is sending spam to my new domain - well into March 2006.

4)  Impulse's reliance on accusations of a scheme and the concepts of indemnification and contribution "fail" in light of the fact that internal documents from Impulse and external documents from CMG, indicate that Impulse's Ken Adamson, Jeffrey Goldstein, and John Huston – at a minimum, knew that no email was to be sent to the email address which bears my name at "gordonworks.com". Despite this knowledge, each man, individually and as a collective, failed to reign in the torrent of

email being sent to "gordonworks.com. My causes of action versus Impulse will bring out more of its scheme or conspiracy to defraud the general public along with its promotion or support of pornography, counterfeit drugs and the like.

5) Impulse's reliance on the assertions of fraud and deceit, tortious interference, malicious prosecution and breach of contract (even if there was a contract [which I deny] it was rescinded via unsubscribe requests in October 2003 starting with Exhibit 3) fail because of the evidence of accurate subscriber profiles and opt-out requests as early as October 1, 2003. Accurate subscriber profiles and opt-out requests along with the communication between CMG and Impulse indicate a good faith effort on the part of the undersigned to extricate myself from the failed attempt to obtain a prize, which ultimately proved to be part of a fraudulent free prize scheme to steal the identity of the undersigned and anyone else who responded to Impulse's offers. **Exhibit 3**

6) The "prayer" for an injunction by Impulse appears to be fraudulent as the documents above indicate that Impulse has refused to honor unsubscribe requests by "gordonworks.com" email addressee(s). Further, it has used its refusal to fabricate its story of its own victimization. In addition to ignoring opt-out requests, Impulse ignore edicts from CMG and internal suppression guidelines – making it answerable to no one. It is Impulse and its marketing partners' behavior that led to any and all damages incurred by Plaintiff and the undersigned.

Damages proffered by Impulse, allegedly as a result of a scheme, are illusory or self-inflicted.

7) Impulse's counterclaims are based on a lie (or series of lies), for example, a) I participated in a scheme to defraud it  b) I opted into one or more of its websites  c) I opted out of one or more of its websites  d) I opted in and opted out, repeatedly  e) Impulse believed that 3rd party defendants' subscriber profiles were inaccurate and untruthful  f) I solicited emails in order to file multiple lawsuits (strictly speaking I have filed no lawsuits against anyone – my counterclaims and causes of action against Impulse were prompted by the pre-existing specious lawsuit by Impulse – I have sued no one else)  g) Impulse has sustained financial loss and continues to accrue losses due to action(s) by Plaintiff and 3rd party defendants. Had Impulse done as it was instructed to do by its principal, CMG, this lawsuit may have been averted altogether. Impulse's Adamson letter of 10/21/03 acknowledges Impulse's placement of "gordonworks.com" "in a file of blocked and/or suppressed recipients – ALL email after this time VIOLATED Impulse's and CMG's corporate policies as well as state and federal civil and criminal laws as outlined in my causes of action versus Impulse.

8) Mr. Ivey et al have criticized my (our) interrogatories, it appears, as something I (we) are parroting for/from Plaintiff. He fails to mention that I (we) now have legitimate claims of my (our) own. These new claims are for statutory damages under RCW 19.190 et seq as Impulse has insinuated itself into

web sites which do not disclose a link to Impulse – claiming that it is a marketing partner simply because it purchased an email list from another spammer. Impulse has failed to disclose via interrogatories and requests for production its list of so-called marketers ostensibly to avoid being painted with the same brush as these "fly-by-night" criminal spam gangs. Discovery now appears to be a one-way street whereby Impulse hounds Plaintiff for discovery while maintaining a closed fist on its requirement for disclosure. For pro se defendants, the distinction between our collective claims, if there is one, is not discernible to us.

9)    As a result of 30 years of marriage, my husband and I discuss and collaborate on most things including litigation and strategies for same. This collaboration has revealed the following, we both understood Mr. Ivey was "his" attorney and that all that was discussed between the two of them was privileged. I was shocked to hear that Mr. Ivey had switched sides. The documents in my possession appear to reveal a betrayal of my husband and a skirting of the truth by Mr. Ivey. **Exhibit 4** – email dated 9/22/03; **Exhibit 5** – email dated 9/25/03; **Exhibit 6** – dated 9/30/03; **Exhibit 7** – dated 9/30/03 to Jamila Gordon; **Exhibit 8** – dated 12/30/03; **Exhibit 9** – dated 4/4/05.

10)    I find it peculiar that Mr. Ivey would retain my husband's email from 2002, but not the 2003 emails that would indicate a conflict.

11)    **Exhibit** lists the case of Gordon v. Commonwealth Marketing Group, Inc. It was a hyperlink to a web site created by my husband which contained detailed information about the lawsuit and emails and the analysis of the email – the web site has been taken down. On the surface, it appears that Mr. Ivey has direct intimate knowledge of both sides in the instant conflict. And Impulse's argument that "the relevant test for disqualification is whether the former representation is 'substantially related' to the current representation" – Gas-A-Thon citation. The substantially related argument is buttressed by Impulse's assertion/claim in its Motion to Dismiss based on "res judicata" (circa January 2005) that the corpus of email was **identical**.

12)    Impulse knows that it is suing pro se defendants. Pro Se defendants by definition are typically not attorneys. As a result, pro se defendants will make mistakes. Impulse has seized every opportunity to threaten and intimidate 3rd party defendants in terms of filings made and the errors which ensue. The primary threat has been for sanctions for making mistakes. If allowed, these sanctions would render 3rd party defendants "paralyzed" in terms of mounting their legal self-defense. It is highly likely that 3rd parties will make more mistakes in their self-defense. As a matter of equity, this Court, I (we) trust will adjudge each filing made by a 3rd party defendant on a good faith proffer of facts – not my (our) legal education or lack thereof.

13)    I do not want to have to interact with Mr. Ivey et al because of

his tendency to intimidate/threaten and I do not believe he is a man of his word. That is the reason for my husband forming a "buffer" for our family and my family's consent for same. It appears that Impulse could correspond via email or suggest another way to overcome the impasse regarding the needed communications in this case. We have been pulled into this scam/scheme of Impulse, but we will defend ourselves to the best of our collective abilities.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Bonnie F. Gordon

9804 Buckingham Drive

Pasco, WA 99301

509-210-1069

EXECUTED this 17th day of March, 2006

_____

Certificate of Service

I, hereby, certify that on March 17, 2006, I filed this affidavit with this Court. I have served Bob Siegel, Peter J. Glantz, Sean A. Moynihan, Floyd E. Ivey, Jamila Gordon, James Gordon III, Jonathan Gordon, Emily Abbey, and Robert Pritchett by other means.

_____

One Millennium Drive
Uniontown, PA 15401
Phone: (724) 437-3707

Commonwealth
Marketing Group

February 9, 2004


Jeff Goldstein                    Facsimile: (678) 805-2101
Impulse Marketing Group, Inc.
Five Concourse Parkway, Suite 950
Atlanta, GA 30328

Re:  James S. Gordon, Jr. v. Commonwealth Marketing Group, Inc.

Dear Jeff:

Commonwealth Marketing Group, Inc. (CMG) hereby gives notice to Impulse Marketing Group, Inc. (IMG) to immediately cause IMG affiliated marketers, offerclicks and freebiegazette, to cease representing, in any and all manner whatsoever, IMG on behalf of CMG, unless and until IMG provides CMG with assurance that it has caused all of its affiliated marketers, including the two mentioned above, to cease and desist from sending messages, to the gordonworks.com e-mail domain.

CMG finds it necessary to take this drastic action as, despite repeated telephone conversations with IMG officers and staff of the need to act immediately on this extremely urgent matter, we learned today that the gordonworks.com domain continues to receive messages from IMG affiliated marketers. Specifically, on January 7, I wrote to you, attached a copy of an Order of Court of Benton County, Washington, against me, personally, CMG and IMG, enjoining the sending of e-mail messages to James Gordon. On January 9, John Fonzo, CMG Vice President and General Counsel, wrote to IMG's Phil Huston, requesting assurances concerning IMG CAN SPAM Act and state anti-Spam law compliance. (Gordon's lawsuits against CMG was filed pursuant to the Washington anti-Spam law). On February 2, Mr. Fonzo again wrote to Phil Huston, informing IMG in writing of our previous oral notification of the Gordon vs. CMG litigation, and raising indemnification issues under the CMG-IMG Website Development and Marketing Services Agreement.

It is my understanding that IMG's lawyers have responded in writing to the January 9 letter concerning SPAM law compliance, providing assurances of IMG compliance. Further, on multiple occasions, CMG has forwarded to IMG several e-mail messages as provided by James Gordon to me, for research and evaluation as to, among other things, origin of the messages, any evidence of Gordon opt-ins, as well as evidence of cessation of messages, to the extent they originated from an IMG affiliated marketer. My staff

CMG 000052

advises that they have had continuous dialogue with IMG technical staff as to these messages, together with certain assurances that proper safeguards were put in place to make certain that additional messages are not sent to Mr. Gordon.

What is equally troubling to me is that IMG was first notified of Gordon's alleged receipt of SPAM in September of 2003, immediately upon CMG's receipt of notice from Gordon of the allegations. Certainly, IMG has had sufficient time to address this serious situation. Thus, you can imagine my confusion, anger and embarrassment when I received from James Gordon on February 7, yet two additional e-mail messages that appeared to have originated from IMG affiliated marketers.

Jeff, it is absolutely imperative that this situation be addressed immediately. Given the long and productive business relationship that CMG and IMG has enjoyed, you must see this demand for IMG affiliated marketers who send messages to gordonworks.com, including the two mentioned above, to cease and desist representing IMG on CMG products as a final effort to get IMG's attention to do what is legally required and commercially responsible.

Please call me immediately upon receipt. At that time, we can direct to the person at IMG who will give this their undivided and immediate attention, the most recent e-mail messages received from James Gordon.

Sincerely,

Robert E. Kane
President & CEO

CMG 000053

27

# KLEIN, ZELMAN, ROTHERMEL & DICHTER, L.L.P.

ATTORNEYS AT LAW

485 MADISON AVENUE

NEW YORK, NEW YORK 10022-5803

TEL. (212) 935-6020

FAX (212) 753-8101

e-mail: kzrd@kzrd.com

FRED C. KLEIN
ANDREW E. ZELMAN
JOAN EBERT ROTHERMEL
JOEL R. DICHTER
JANE B. JACOBS
NANCY B. SCHESS
DAVID O. KLEIN
LAURENCE J. LEBOWITZ
SEAN A. MOYNIHAN

JOHN T. UM
JOSHUA D. ROSE
DEENA B. BURGESS

STEPHEN B. HANSBURG
OF COUNSEL

February 3, 2004

<u>VIA FIRST CLASS MAIL</u>

John P. Fonzo, Esq.
Vice President & General Counsel
Commonwealth Marketing Group
One Millennium Drive
Uniontown, PA  15401

Re:  <u>CAN-SPAM compliance</u>

Dear Mr. Fonzo:

Please be advised that this firm represents Impulse Marketing Group, Inc. ("Impulse"). We write in response to your January 9, 2004 correspondence addressed to Mr. Phil Huston, in which you request that Impulse detail the steps that it has taken to comply with the provisions of the CAN-SPAM Act of 2003 ("CAN-SPAM" or the "Act"), specifically as they relate to the services that Impulse provides to Commonwealth Marketing Group ("Commonwealth") under contract dated December 10, 2001 (the "Agreement"). Impulse has assured us that during the life of its relationship with Commonwealth, it will at all times provide services to Commonwealth in strict conformance with the requirements of CAN-SPAM and any subsequent amendments. In furtherance of this commitment, Impulse is amenable to crafting a mutually acceptable rider to the existing Agreement that will address the parties' respective CAN-SPAM obligations, while providing reciprocal indemnification provisions that will be triggered should either party at any time fail to comply with the Act.

As of January 1, 2004, Impulse has implemented the following internal procedures so that its business is conducted in accordance with CAN-SPAM regulations. In particular, and without limitation, Impulse ensures that each and every commercial e-mail that it sends, or has sent through a third party, contains: accurate header information; correct domain name and/or IP address; "subject" and "from" lines that are not fraudulent, deceptive or misleading; a functioning return/reply e-mail address for unsubscribe purposes and an unsubscribe hyperlink

{00062027;2}

CMG 000050

28

KLEIN, ZELMAN, ROTHERMEL & DICHTER L.L.P.

*John P. Fonzo, Esq.*
*February 3, 2004*
*Page 2*

that is functional for thirty (30) days after the applicable e-mail transmission date; language identifying such commercial e-mail as an advertisement or solicitation; and valid, physical mailing addresses (not P.O. boxes) for both Impulse and its advertiser-clients, such as Commonwealth. As required by the Act, Impulse processes all unsubscribe requests within ten (10) days of receiving such requests, if not sooner. Each unsubscribed e-mail address is then transferred to the Impulse suppression list. This list is updated on a daily basis, divided up into separate advertiser-specific suppression lists and made available to the applicable advertiser-clients for their own internal scrubbing and suppression purposes.

Should you have any further questions on the CAN-SPAM compliance measures taken by Impulse, please contact me at your convenience. We will begin drafting the CAN-SPAM rider next week and will have same for your review promptly thereafter. I look forward to working with you.

Sincerely,

David O. Klein

cc: Phil Huston

{00062027;2}

CMG 000051

Exhibit 3

X-Persona: <ValueWeb>
Received: from cust_req_fwding (james@gordonworks.com --> jim@gordonworks.com) by ams.ftl.affinity.com id
<216611-20680>: Wed, 1 Oct 2003 10:08:34 -0400
Received: from relay02.mindsharedesign.com ([216.39.113.10]) by ams.ftl.affinity.com with ESMTP id <216875-20663>;
Wed, 1 Oct 2003 10:07:39 -0400
Received: from i.pm0.net (i.pm0.net [216.39.113.141])
     by relay02.mindsharedesign.com (Postfix) with ESMTP id A6E31643B
     for <james@gordonworks.com>; Wed, 1 Oct 2003 07:05:16 -0700 (PDT)
Received: (from pmguser@localhost)
     by i.pm0.net (8.12.8/8.12.2/Submit) id h91E7bxU007989;
     Wed, 1 Oct 2003 07:07:37 -0700 (PDT)
Date: Wed, 1 Oct 2003 07:07:37 -0700 (PDT)
Message-Id: <200310011407.h91E7bxU007989@i.pm0.net>
From:   "EmailPrize.com" <pmgsender@returns.mb00.net>
To:     <james@gordonworks.com>
X-PMG-Userid: emailprize
X-PMG-Msgid: unsubscribe
X-PMG-Recipient: james@gordonworks.com
Subject: Unsubscribed Successful!
MIME-Version: 1.0
Content-Type: text/plain; charset="iso-8859-1"

You have been unsubscribed to the EmailPrize Newsletter.  We are sorry to see you leave.

EmailPrize.com



From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Help With District Courts Complaints
Date: Mon, 22 Sep 2003 10:29:23 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

Thanks for the interesting note.  I certainly have an interest but will
first point you to direct contact with the Attorney General's office.  They
may be able to indicate the extent of their efforts and may have an interest
in your work.

Moving a positive result in District Court to a meaningful prospect of
gaining dollars will likely be difficult.  The Attorney General may have a
clear perspective of the possibility of having success via litigation.

Please let me know the nature of any contact you might have with the AG.

Floyd E. Ivey


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Monday, September 22, 2003 8:15 AM
Subject: Help With District Courts Complaints


> Floyd:
>
> I would like you to consider the following information as I will need help
> completing the work that I have outlined, below...
>
> I have taken the following affirmative steps to reduce the 600+ emails
that
> I have been receiving every day since 1998:
>
> 1. I purchased forensic software to allow me to trace the origin of
emails.
> 2. Mailed demand letters to individuals and entities that have spammed me.
> Each letter contained the following info:
>        a. A two page copy of RCW 19.190 - WA anti-spam statute
>        b. Copies of the unlawful headers from the email that the
spammers
> sent to me.
>        c. Demand for damages of $500 per violation - the threshold for
> sending a letter was 10 violations or more
> 3. Mailed a total of 30 demand letters to the most egregious violators of
> this law.
>
> Currently, I have drafted a complaint - the draft was based on a template
> from a successful defense of RCW 19.190 in Western WA. I am seeking an
> attorney to "perfect" my complaint so that I may file it in District
Court.
> In the alternative, I may want to hire an attorney to represent me in
court.
>
> An interesting side note is since the demand letters were delivered to
> these spammers, a few have continued to send their spam "flaunting" our
> law. I believe that there is a second cause of action (perhaps harassment)

Printed for Jim Gordon <Kamau@charter.net>

10/2/2005

31

Case 2:06-cv-01284-JCC    Document 48    Filed 12/22/2006    Page 32 of 36
Case 2:06-cv-01284-TSZ    Document 16    Filed 10/20/2006    Page 32 of 36

Exhibit 5

From: "floyd ivey" <feivey@3-cities.com>
To: "Jim Gordon" <res08nqc@verizon.net>
Subject: Re: Article from Wired World
Date: Thu, 25 Sep 2003 09:38:24 -0700
X-Mailer: Microsoft Outlook Express 6.00.2800.1158

Jim,

The problem with present resistance to spam is the cost. That is, it will
cost $225/hour for me to explore with no clear ability to find a solution.
Further, should you actually locate a spammer there would be doubt regarding
the ability to collect on any judgment.

In the mean time someone has commenced such a lawsuit. I haven't heard re:
the status for months. And the Attorney Generals of many states are likely
looking at the issue.

Thus others are doing the work at no expense to you. There will be a real
budget needed for you to commence the effort. Please advise if you want to
examine the prospect of going forward.


Floyd


----- Original Message -----
From: "Jim Gordon" <res08nqc@verizon.net>
To: <feivey@3-cities.com>
Sent: Thursday, September 25, 2003 9:09 AM
Subject: Article from Wired World


> Floyd:
>
> My domain name - gordonworks.com is under siege. Whether we consider my
> domain name intellectual PROPERTY or personal PROPERTY, this property is
> being encroached upon - to the tune of 4MB+ every day. This encroachment
> displaces my computer's memory with unsolicited - even unlawful commercial
> email.
>
> I have kept records of this spam since 8/6/03. In that time (51 days), I
> have received 122MB of spam. In the past 24 hours, I have received 4.6MB
of
> spam. I am feeling a since of urgency...
>
> One might ask why I don't simply filter and delete these email. I have
been
> filtering and deleting email since 1998. During that time, my daily volume
> of email approached 1500 messages per day. I found that filters can be
> defeated/circumvented - so I spent time revising and updating my filters.
> My collection of spam (over 20,000 messages) now serves one purpose - that
> of being evidence against those who spam me and millions of others.
>
> My spam problem was an imposition on my business and it is an imposition
on
> my personal use of the Internet. Therefore, I have chosen to stop running
> and hiding from spam. I believe that Washington's anti-spam statute was
> designed to prevent much of the abuse that I am experiencing.
>
> The article below discusses the concept of "trespass" as it pertains to
> spam...I experience this sense of being trespassed upon each time that I
> check my email - 6+ times per day.

feivey@3-cities.com, 11:15 AM 9/30/2003 -0700, First spam Complaints

To: feivey@3-cities.com
From: Jim Gordon <res08nqc@verizon.net>
Subject: First spam Complaints
Cc:
Bcc:
Attached: C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftTheodorehansson.doc; C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftAmericanHomeownersASSN.doc;

Floyd:

I have the email documentation, which shows the violations that I allege. I have also "drafted" two complaints. How would you like to proceed? And what costs can we identify at this point?

I believe that we will prevail in these matters. However, I would like to be as frugal as possible on this first lawsuit [I have been unemployed since 7/31/03]. There are 30+ complaints to go.

I'd like to have the first complaint [AHA] filed and sent to the Defendant with a final offer to settle out-of-court.


Regards,
Jim Gordon


**1. American Homeowners Assn. [ 144 emails | $72,000 claim**
   1100 Summer St.
   Stamford, CT 06905

https://www.ahamembership.com/index.cfm

This company sent me a written "rejection" of my "demand for damages" letter that I sent to them. However, they continue to send me ads that offer free products, which actually would cost me a tiny fee, that is to be charged to my credit card and I would also be obligated to receive their one month trial membership - not so free after all. Their email explicitly proclaims, "Click now and complete the form to get your Gift Now! This offer is with **no obligation** and the gift is yours to keep."


**2. Theodore Hansson [ 94 emails ] $47,000 claim**
   4137 248th Ct. SE
   Issaquah, WA 98029

http://www.esioffers.com/campaigns/thansson/?link=2464

http://www.megawavez.com/hansson/index.html

He sells books...states that people can use his money to buy discounted paper. Some of the subject lines for his email follow:

Subject: Wanna Use My Money?
Subject: Use my money... all of it!
Subject: You can use MY money
Subject: Split the profits 50-50 using MY money


---

Printed for Jim Gordon <Kamau@charter.net>                                                    1

*33*

Jamila & Tommy, 01:26 PM 9/30/2003 -0700, Update

To: "Jamila & Tommy" <jamila@charter.net>
From: Jim Gordon <res08nqc@verizon.net>
Subject: Update
Cc:
Bcc: bonnie.gordon@verizon.net
Attached: C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftAmericanHomeownersASSN.doc; C:\Temp\Spam Complaint Form_files\Complaints\pleadingdraftTheodorehansson.doc;

Jamila:

Please hold on to the attachments - they are templates for future litigation. The email accounts for the family have the following totals:

| Name | Total Emails (unresearched) | Unlawful spam (researched) |
|------|------------------------------|----------------------------|
| Bonnie | 1505 | 153 |
| James | 3409 | 343 |
| Jamila | 1132 | 94 |
| Jay | 1552 | 124 |
| Jon | 1138 | 95 |

The complaints that I drafted for my attorney, Floyd Ivey, are attached. Each unlawful spam could be worth $500 - if we prevail in court

34

feivey@3-cities.com, 11:13 AM 12/30/2003 -0800, Status

To: feivey@3-cities.com
From: Jim Gordon <res08nqc@verizon.net>
Subject: Status
Cc:
Bcc:
Attached:


Floyd:

On Wednesday, the 24th a Superior Court judge gave me an early Christmas present in the form of two temporary restraining orders against two of the companies that have been spamming me. On January 8th, 2004, I will appear in Superior Court to request a permanent injunction against these companies and their agents.

Below are links to the steps that I have taken to stop the spamming.

Here's a link to the online Herald-Standard.
http://www.heraldstandard.com/site/news.cfm?newsid=10686398&BRD=2280&PAG=461&dept_id=480247&rfi=8

http://www.gordonworks.com/spam

http://www.gordonworks.com/spam/TedHansson.htm

http://www.gordonworks.com/spam/CommonwealthMarketingGroup.htm

If I prevail in these initial lawsuits, there are over 70 more anti-spam lawsuits that I wish to file in Superior and District Courts. If you are still interested, in what way do you envision assisting me?


Seasons Greetings,
Jim Gordon

Akers, Doug E, 08:47 AM 4/4/2005 -0700, RE: FW: Battelle Contract for Review

To: "Akers, Doug E" <doug.akers@pnl.gov>
From: Jim <Kamau@charter.net>
Subject: RE: FW: Battelle Contract for Review
Cc:
Bcc:
Attached:


Actually it is Doug McKinley v Floyd Ivey

At 07:48 AM 4/4/2005 -0700, you wrote:
    By chance are you working with Dave Broussard?   Good Guy

Look forward to hear from one of them.

    Take Care

    Doug

        -----Original Message-----
        From: Jim [mailto:Kamau@charter.net]
        Sent: Saturday, April 02, 2005 8:30 AM
        To: Akers, Doug E
        Cc: Shoemaker, Steven V
        Subject: Re: FW: Battelle Contract for Review

        Doug:

        I have not had an opportunity to take this contract to an attorney yet - because the two attorneys that I typically use
        are facing one another - one for me and the other against (yes, it technical is a conflict of interest, but...). The attorney
        that is for me, does work for the Lab, which makes advising me a possible conflict of interest - so, I may go to a third
        attorney...

        I appreciate you diligence on the preparation of this document and will get legal advice as soon as possible.

        Best Regards,
        Jim

        At 07:29 AM 3/7/2005 -0800, you wrote:

        Jim,

        Here it is.  Hopefully it will make it through this time.

        Doug

            -----Original Message-----
            From: Akers, Doug E
            Sent: Tuesday, February 22, 2005 12:07 PM
            To: 'jim@gordonworks.com'
            Cc: Shoemaker, Steven V; Strycker, Forest E Jr
            Subject:    Battelle Contract for Review

            Jim,