Omni Innovations LLC v. Ascentive LLC et al                                    Doc. 54

Case 2:06-cv-01284-JCC      Document 54      Filed 12/22/2006      Page 1 of 6
Case 2:06-cv-01284-TSZ      Document 30      Filed 11/29/2006      Page 1 of 6

1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
8                                    AT SEATTLE

9

10   OMNI INNOVATIONS, LLC, a Washington
     Limited Liability company; EMILY ABBEY,
11   an individual,

                                                        C06-1284Z
12                    Plaintiffs,
                                                        ORDER
13   v.

14   ASCENTIVE, LLC, a Delaware limited
     liability company; ADAM SCHRAN,
15   individually and as part of his marital
     community; JOHN DOES, I-X,
16
                      Defendants.
17

18

19          This matter comes before the Court on Plaintiffs' Motion to Disqualify Counsel,

20   docket no. 3. Having considered the briefs and declarations in support of and opposition to

21   the motion, the Court enters the following Order.

22   I.     BACKGROUND

23          On September 19, 2006, Plaintiffs Omni Innovations, LLC ("Omni") and Emily

24   Abbey filed a complaint alleging "anti-spam" claims under Washington and federal statutes

25   against Defendants Ascentive LLC ("Ascentive") and Adam Schran, an officer of Ascentive.

26   Am. Compl., docket no. 2. On October 3, 2006, prior to the appearance of defense counsel,

ORDER  1–

1  Plaintiffs moved to disqualify Floyd E. Ivey, an attorney in Kennewick, Washington, from

2  representing Defendants. Pls.' Mot., docket no. 3. Plaintiffs assert that Omni and James S.

3  Gordon, Jr., the principal member and owner of Omni, are Mr. Ivey's former clients, that this

4  matter is substantially related to the former representation, and that Mr. Ivey has failed to

5  obtain written consent from Mr. Gordon to represent Defendants, as required by Rule 1.9 of

6  the Washington Rules of Professional Conduct ("RPC"). Plaintiffs also request attorney's

7  fees and sanctions. Pls.' Mot. at 13. After Plaintiffs filed their motion, Mr. Ivey appeared

8  on behalf of Defendants. Notices, docket nos. 8 and 26. Defendants (through Mr. Ivey)

9  oppose Plaintiffs' motion to disqualify. Defs.' Resp., docket no. 14.

10       It is undisputed that in 2002, Mr. Gordon retained the legal services of Mr. Ivey to

11  assist him in drafting contracts for Omni. Gordon Decl., docket no. 4, ¶ 2. Between

12  September 2003 and December 2003, Mr. Gordon and Mr. Ivey exchanged a series of emails

13  unrelated to the contract work performed by Mr. Ivey for Mr. Gordon. Mr. Gordon's initial

14  email to Mr. Ivey on September 22, 2003 sought Mr. Ivey's help in bringing anti-spam

15  lawsuits. Id., Ex. 1. Mr. Gordon described the number of cases and causes of action that he

16  would like to bring, and the monetary relief that he would seek. Id. Mr. Ivey responded by

17  stating that he "certainly has an interest" in helping Mr. Gordon. Id. Mr. Ivey commented

18  on the difficulty of "gaining dollars" in these cases. Id. Mr. Ivey directed Mr. Gordon to

19  contact the Attorney General's office, and then stated: "Please let me know the nature of any

20  contact that you might have with the AG." Id.

21       A few days later, Mr. Gordon sent another email to Mr. Ivey, summarizing the

22  evidence that he had gathered, and his motivation to fight spam, including the impact on his

23  business. Id., Ex. 2. Mr. Ivey promptly emailed Mr. Gordon back, quoting Mr. Gordon a

24  rate of $225 per hour, and offering his views about the difficulty in collecting on a judgment

25  in these types of cases. Id. Mr. Ivey ended the email stating "[p]lease advise if you want to

26  examine the prospect of going forward." Id.

ORDER  2–

1    Thereafter, Mr. Gordon sent Mr. Ivey two more emails.  The email dated September

2  30, 2003 divulged the names of two possible defendants, and the amounts of money that

3  would be sought from them based on the evidence that he had against them.  Id., Ex. 3.  The

4  email dated December 30, 2003 summarized the success Mr. Gordon had, while acting pro

5  se, in obtaining temporary restraining orders against two (unnamed) companies that had been

6  spamming him.  Id., Ex. 5.  Mr. Ivey did not respond to these latter emails.

7    In addition to emails, Mr. Gordon's declaration states that "Mr. Ivey and I

8  corresponded and talked (face-to-face) about spam lawsuits for approximately six months."

9  Id. ¶ 3.  Although Mr. Ivey has not denied this face-to-face correspondence, the substance of

10  this correspondence is unknown to the Court.

11    Mr. Gordon's declaration further states that "[t]here was no doubt in my mind at the

12  time that I had established an attorney-client relationship with Mr. Ivey."  Id. ¶ 2.  The

13  contemporaneous email that Mr. Gordon sent to his family on September 30, 2003, in which

14  he says he attached "[t]he complaints that I drafted for my attorney, Floyd Ivey,"

15  demonstrates that he believed Mr. Ivey was, in fact, his attorney.  Id., Ex. 4.

16  **II.    DISCUSSION**

17    When determining whether to exercise discretion to disqualify counsel, the Court

18  should resolve any doubts in favor of disqualification.  In re Coordinated Pretrial

19  Proceedings in Petroleum Prods. Antitrust, 658 F.2d 1355, 1359 (9th Cir. 1981).  Attorneys

20  practicing in this district must abide by the Washington Rules of Professional Conduct.  See

21  United States ex rel. Lord Elec. Co., v. Titan Pac. Constr. Corp., 637 F. Supp. 1556, 1560

22  (W.D. Wash. 1986); Local Rule GR 2(e)(2).  RPC 1.9 provides that a lawyer may not

23  represent a client if the former client's interests are adverse and the matter is substantially

24

25

26

ORDER   3–

1  related, or if he or she is utilizing confidences to the disadvantages of the former client.[1]

2  RPC 1.9(a), (b).

3       The Washington Supreme Court discussed the factors to determine whether an

4  attorney/client relationship is formed:

5  > The essence of the attorney/client relationship is whether the attorney's advice
>  or assistance is sought and received on legal matters. The relationship need not
6  > be formalized in a written contract, but rather may be implied from the parties'
>  conduct. Whether a fee is paid is not dispositive. The existence of the
7  > relationship turns largely on the client's subjective belief that it exists. The
>  client's subjective belief, however, does not control the issue unless it is
8  > reasonably formed based on the attending circumstances, including the
>  attorney's words or actions.

9

10  Bohn v. Cody, 119 Wn.2d 357, 363 (1992) (internal quotations and citations omitted). An

11  attorney client prospective relationship is a "protected relationship" under Washington law.

12  Dietz v. Doe, 131 Wn.2d 835, 845 (1997).

13       Mr. Gordon had a subjective belief that Mr. Ivey and he had an attorney-client

14  relationship in the fall of 2003. Gordon Decl. ¶ 2.[2] Mr. Gordon's belief was reasonably

15

16  [1] RPC 1.9 provides:

17

18  > A lawyer who has formerly represented a client in a matter shall not
>  thereafter:

19

20  > (a) Represent another person in the same or a substantially related matter in
>  which that person's interests are materially adverse to the interests of the
21  > former client unless the former client consents in writing after consultation
>  and a full disclosure of the material facts; or

22  > (b) Use confidences or secrets relating to the representation to the
23  > disadvantage of the former client, except as rule 1.6 would permit.

24  [2] Mr. Gordon's statement as to his subjective belief in the attorney-client relationship is a
significant piece of evidence distinguishing the present motion from the motion to disqualify
25  that was pending before Judge Van Sickle in Gordon v. Impulse Marketing Group, Inc., Case
No. CV-04-5125-FVS. The motion before Judge Van Sickle was also brought by different
26  parties who had no attorney-client relationship with Mr. Ivey. Judge Van Sickle's Order, see
docket no. 14 at 7-18, is not binding on the parties in the present case.

ORDER  4–

1    formed based on Mr. Gordon's and Mr. Ivey's existing professional relationship, which was

2    established as a result of the contract work performed by Mr. Ivey for Omni, see Teja v.

3    Saran, 68 Wn.App. 793, 796 (1993), and based upon Mr. Ivey's responses to Mr. Gordon's

4    emails.  Mr. Ivey's responses invited future contact and indeed led Mr. Gordon to disclose

5    more details about his litigation strategy to Mr. Ivey.  At a minimum, Mr. Gordon and Mr.

6    Ivey had a prospective attorney-client relationship regarding the anti-spam lawsuits.  It is

7    noteworthy that Mr. Ivey did not provide any disclaimers regarding the attorney-client

8    relationship to make clear to Mr. Gordon from the outset of his communications that Mr.

9    Ivey would not be able to represent him.  Cf. Bohn, 119 Wn.2d at 363-64 (no attorney-client

10   relationship formed where disclaimers were provided).

11            Under Washington law, representations are "substantially related" "if they involve the

12   same client and the matters or transactions in question are relevantly interconnected." FMC

13   Techs., Inc. v. Edwards, 420 F.Supp.2d 1153, 1159 (W.D. Wash. 2006).  RPC 1.9's

14   "prohibition against side-switching is based not only upon the duty prohibiting the disclosure

15   of confidences, but also upon a duty of loyalty." Teja, 68 Wn.App. at 798-99.  Proof of

16   disclosure of confidential information is not necessary if the matters are substantially related.

17   Id. at 799.  Because Mr. Gordon's and Mr. Ivey's email exchange concerned anti-spam

18   lawsuits, and the present litigation is an anti-spam lawsuit brought by Mr. Gordon's

19   company, Omni, the prospective attorney-client relationship formed between Mr. Ivey and

20   Mr. Gordon in the fall of 2003 is relevantly interconnected, and therefore "substantially

21   related," to Mr. Ivey's current representation of Defendants.

22            It is undisputed that Mr. Ivey did not seek a waiver of conflict from Mr. Gordon.

23   Gordon Decl. ¶ 8.  Accordingly, the Court GRANTS Plaintiffs' motion and disqualifies Mr.

24   Ivey based upon Mr. Ivey's failure to comply with RPC 1.9(a).[3]  However, the Court

25   _____

26   [3] The Court does not reach the proposed alternative grounds for disqualification under RPC
     1.9(b) or Rule 3.7.

     ORDER  5–

1   DENIES Plaintiffs' motion as it relates to attorneys' fees and sanctions because Plaintiffs

2   failed to provide any legal authority or argument in support of their request.

3   ## III.    CONCLUSION

4        The Court GRANTS IN PART and DENIES IN PART Plaintiffs' Motion to

5   Disqualify Counsel, docket no. 3.  The Court grants the motion as it relates to representation

6   and disqualifies Mr. Ivey from representing Defendants.  The Court denies the motion as it

7   relates to fees and sanctions.

8        IT IS SO ORDERED.

9        DATED this 29th day of November, 2006.

10

11                              Thomas S. Zilly

12                              Thomas S. Zilly
                               United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER   6–