| | |
|---|---|
| i.Justice Law, P.C.<br>Robert J. Siegel<br>1325 Fourth Ave., Suite 940<br>Seattle, WA 98101<br>(206) 304-5400 | THE HON. THOMAS S. ZILLY |

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, SEATTLE

| | |
|---|---|
| **OMNI INNOVATIONS, LLC, a Washington limited liability company; Emily Abbey, an individual,**<br><br>                  **Plaintiff,**<br>v.<br><br>**ASCENTIVE, LLC, a Delaware limited liability company; ADAM SCHRAN, individually and as part of his marital community; JOHN DOES, I-X,**<br><br>                  **Defendants.** | NO. CV06-01284<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO STAY THIS LITIGATION**<br><br>Noted for Motion Calendar:<br>March 16, 2007 |

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO STAY THIS LITIGATION. - 1

**i.Justice Law, P.C.**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-304-5400
Fax: 206-624-0717

## INTRODUCTION

Defendants' motion to dismiss and to stay this action should be denied because even if the Court were to reverse all of the presumptions that normally apply to motions brought under FRCP 12 (b)(6), instead accepting all of the facts and legal analysis set forth in the Defendants' motion as true (as opposed to accepting as true the facts and allegations set forth in Plaintiffs' complaint), both Omni Innovations, LLC ("Omni") and Emily Abbey's ("Abbey") sate law claims under CEMA still survive. Accordingly, Abbey should not be dismissed and Omni's claims should not be stayed.

## ARGUMENT AND AUTHORITY

Defendants have offered three theories in support of their motion.

**1. Abbey's Claims Sound Under CEMA as an Individual Recipient – Her Status as an Internet Access Service is Irrelevant.** Defendants have argued that Plaintiff Emily Abbey's claims should be dismissed because she is not an "Internet Access Service" ("IAS") as that term is defined in CAN SPAM. However, Abbey's claims arise under Washington State's anti-spam statue, CEMA.[1] Emily Abbey has standing to bring her claims because CEMA only

---

[1] Plaintiff contends that Emily Abbey's claims as a recipient of unlawful spam under CEMA (as opposed to her being an Internet Access Service under CAN SPAM), was clear from the original complaint. Under FRCP 8(a) notice pleading in which litigants are generally required only to provide their opponent with fair notice of their claim and the grounds upon which that claim rests. *Swierkiewicz v. Sorema N. A.,* 534 U.S. 506, 512, 122 S. Ct. 992, 998, 152 L. Ed. 2d 1 (2002); *Conley v. Gibson,* 355 U.S. 41, 47, 78 S. Ct. 99, 102, L.Ed.d 80 (1957). The rules "do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds on which it rests." *Conley v. Gibson,* supra. Assuming, however, that it was not clear in the original complaint that Emily Abbey's claims were based on her receipt of illegal email under CEMA, the Plaintiff has now filed a motion for leave to amend the complaint, to add this clarity. The Court should grant this motion because, to the extent that this clarity is lacking, the amendment FRCP 15 and Washington case law provide that leave to amend a complaint should be granted liberally, and the

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND TO STAY THIS LITIGATION.
- 2

**i.Justice Law, P.C.**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-304- 5400
Fax: 206-624-0717

requires that a Plaintiff be a Washington resident who has received illegal commercial email a/k/a "spam" at their email address. RCW 19.190.020 states in pertinent part

(1) No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, <u>is held by a Washington resident</u> that:.. (emphasis added).

As plainly set forth both in the initial complaint, and now the amended complaint, Abbey is a Washington resident, and she has received unlawful email at her email address initiated by or on behalf of Defendants, whose products are indisputably advertised in the subject emails. As such, she has standing to bring her claims, and her status as an IAS under Can-Spam, or as an Interactive Computer Service ("ICS") under the CEMA are irrelevant to this action.

**2.     Omni Clearly Qualifies as an Internet Access Service and Interactive Computer Service.**     The Defendant's second theory is that this litigation should be stayed because the Defendant's lawyers have brought a specious motion claiming Omni is not an IAS in another action (hereafter the "other action"). However, as in the other action, Omni has also brought claims under Washington State's anti-spam statue, CEMA. Omni has standing to bring these claims because Omni is an "Interactive Computer Service" under CEMA. Notably, nowhere in the other action has any party challenged Omni's status as an ICS under CEMA, nor have the Defendants claimed that anyone else has done so. The Court should therefore note that

---

purposes of CR 15 are to "facilitate a proper decision on the merits", *CARUSO v. LOCAL 690, INT'L BHD. OF TEAMSTERS*, 100 Wn.2d 343, 670 P.2d 240 (1983), at 349, and to provide each party with adequate notice of the basis of the claims or defenses asserted against him. *PIERCE CY. SHERIFF v. CIVIL SERV. COMM'N*, 98 Wn.2d 690, 695, 658 P.2d 648 (1983).

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND TO STAY THIS LITIGATION.
- 3

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-304- 5400
Fax: 206-624-0717

the definition of an IAS under CAN SPAM is different than the definition of an ICS under CEMA. RCW 19.190.010(8) defines an ICS as follows:

> "Interactive computer service" means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the internet and such systems operated or services offered by libraries or educational institutions.

The CAN-SPAM Act defines an IAS as follows:

> "The term "Internet access service" has the meaning given that term in section 231(e)(4) of Title 47,"

which in turn states:

> "The term "Internet access service" means a service that enables users to access content, information, electronic mail, or other services offered over the Internet, and may also include access to proprietary content, information, and other services as part of a package of services offered to consumers. Such term does not include telecommunications services."

Thus, even if the Court in the other action determined that Omni is not an IAS under CAN SPAM, the Court will *not* have necessarily determined whether Omni is an ""ICS under CEMA. Accordingly, Omni's claims under CEMA will proceed in the other action *regardless* of whether the Court rules that Omni isn't an IAS in the other action. It would be an erroneous result to stay proceedings in the instant action awaiting a ruling that cannot possibly impact Omni's state law CEMA claims awaiting a ruling by the Court in the other action on separate and distinct federal CAN-SPAM claims.

### 3. **The Washington CEMA is Not Preempted by the federal CAN-SPAM Act.**

Finally, the Defendants assert that the Plaintiff's claims under CEMA are preempted by CAN SPAM. At the outset, the Plaintiff's note that the Defendant's argument relies entirely on the

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND TO STAY THIS LITIGATION.
- 4

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-304- 5400
Fax: 206-624-0717

Fourth Circuit's recent ruling that CAN SPAM preempted portions of an Oklahoma statute in Omega World Travel v. Mummagraphics, Inc. 469 F.3d 348 (4th Cir. 2006). However, the Oklahoma statute is not at issue in this case, and therefore Omega does not apply. Washington's statute, the CEMA, is at issue in this case. CEMA has been upheld by Washington State courts as not being subject to federal preemption. Moreover, the Court should also note that the federal Court in the Eastern District of Washington has directly considered whether CEMA is preempted by CAN SPAM, and has concluded that it is not.[2]

> The Court concludes that the plain language of the CAN-SPAM Act does not support Defendant's argument that Plaintiff's claims are preempted by the CAN-SPAM Act. Since subsection 1(a) prohibits misrepresentation in the transmission path or in identifying the point of origin, and subsection 1(b) prohibits false or misleading information in the subject line, the Court concludes that Washington's Commercial Electronic Mail Act is excepted from federal preemption because it prohibits "falsity and deception". Further, since it is a violation of Washington's CPA, RCW § 19.86, "to conspire with another person to initiate the transmission or to initiate the transmission of a commercial electronic mail message" that contains "false or misleading information in the subject line", RCW § 19.190.030(1), Plaintiff's claim that Defendant violated Washington's CPA is also excepted from federal preemption. Accordingly, to the extent Defendant's motion to dismiss is based on the assertion that Plaintiff's claims are preempted by federal law, the motion is denied. *Gordon v. Impulse Mktg. Group, Inc.*, 375 F. Supp. 2d 1040, 1045-46; 2005 U.S. Dist. LEXIS 17147; 10 A.L.R.6th 681 (E.D. Wash. 2005)

There are further distinctions besides the fact that the Omega court was construing a different statute. In Omega, the only violation of CAN SPAM before the Court was a very specific inaccuracy in an email header that the Omega Court ruled was not "materially false or materially misleading." Defendants contend that the specific violations of the emails at issue in

---

[2] The Plaintiff is somewhat dismayed that the Defendant did not bring this ruling to the Court's attention, given that the Plaintiff's attorneys were made aware of the decision in the other action.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS AND TO STAY THIS LITIGATION.
- 5

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-304- 5400
Fax: 206-624-0717

this matter are the same as those set forth in the other action, and should be treated the same as the specific violation discussed in <u>Omega</u>, but they provide no basis for this contention, and they are wrong.  Obviously, the emails at issue in the present lawsuit are not the same as the emails at issue in either the other action or <u>Omega.</u>.  In fact, the alleged violations are substantively different than those set forth in <u>Omega</u> and in the other action.   Of course, the Defendant has no way of knowing that with any certainty, since discovery has yet to commence, and the Plaintiff has yet to set forth all of the details of the specific violations of the emails that are at issue here.  Accordingly, the present case is readily distinguished not only from <u>Omega</u>, but also from the other action based on the facts at issue in the specific emails, despite the Defendant's wholly unsupported allegations to the contrary.

Even if the Court ignores the facts that distinguish <u>Omega</u> from the present case, Omni would still argue that the Fourth Circuit's holding in <u>Omega</u> should not be followed by this or any other Court, because it is simply bad law.

While the Fourth Circuit correctly recognized that Congress created a national standard for commercial email with the CAN-SPAM Act, Congress plainly did NOT intend to have this standard apply in <u>all</u> areas governing commercial email.  Congress explicitly stated:

> IN GENERAL- This Act supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, <u>except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto</u>. 15 USC 7707(b)(1) (emphasis added).

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO STAY THIS LITIGATION. - 6

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-304- 5400
Fax: 206-624-0717

The <u>Omega</u> Court simply ignored this language, and assumed that Congress intended that the national standard created by the Act would apply in all areas governing commercial email. However, it is clear that the Congress had no such intention.  Rather, Congress specifically preserved the authority for the States to promulgate statutes, regulations, and/or rules prohibiting falsity or deception in any portion of a commercial electronic mail message or information attached thereto.  The legislative history is clear on this issue.

> Thus, a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted.  <u>By contrast, a state law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted</u>…
>
> Given the inherently interstate nature of e-mail communications, the Committee believes that this bill's creation of one national standard is a proper exercise of the Congress's power to regulate interstate commerce that is essential to resolving significant harms from spam faced by American consumers, organizations, and businesses throughout the United States.  This is particularly true because, in contrast to telephone numbers, e-mail addresses do not reveal the State where the holder is located.  As a result, a sender of e-mail as a no easy way to determine with which State law to comply.  <u>Statutes that prohibit fraud and deception in the e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway.</u>  Sen. Rep. No. 108-102, at 21-22 (2003) (emphasis added).

Accordingly, there is really no question that Congress intended to allow the States wide latitude in governing falsity and deception, and had no intention whatsoever of applying a national standard over these consumer protection aspects of commercial email.  For the Court to eviscerate Washington's anti-spam statute, CEMA, in the face of this clear Congressional intent would plainly frustrate the Congress' purpose in carefully carving out the exception for statutes, regulations, and/or rules prohibiting falsity or deception to the general pre-emption rule provided in the CAN SPAM Act.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO STAY THIS LITIGATION. - 7

**i.Justice Law, P.C.**
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-304- 5400
Fax: 206-624-0717

## CONCLUSION

Plaintiffs respectfully request that the Court deny the Defendant's Motion under FRCP 12(b)(6) and for a stay, and allow the case to proceed in due course.

**RESPECTFULLY SUBMITTED** this 12TH day of March, 2007.

/S/ Robert J. Siegel
Robert J. Siegel, WSBA #17312
Attorney for Plaintiffs

## Certificate of Service

I, hereby, certify that on March 12, 2007, I filed the attached pleading with this Court via approved electronic filing, and served the following:
Attorneys for Defendants: Derek Newman, Newman & Newman.

i.Justice Law, PC

/s/ Robert J. Siegel

Attorneys for Plaintiffs.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND TO STAY THIS LITIGATION. - 8

i.Justice Law, P.C.
1325 Fourth Ave., Suite 940
Seattle, WA 98101
Phone: 206-304- 5400
Fax: 206-624-0717